## THE STATE v. CLOUSER.

1. **Murder:** CONVICTION: INSUFFICIENT EVIDENCE. The defendant was found guilty of murder upon the testimony of an alleged accomplice and evidence of other circumstances tending to corroborate him. But upon consideration of the whole evidence, (see opinion,) *held* that it did not establish defendant's guilt beyond a reasonable doubt.

*Appeal from Mills District Court.*

TUESDAY, JUNE 22.

INDICTMENT, charging that the defendant murdered William Doran. Trial by jury. Verdict guilty, and that the defendant be imprisoned for life in the penitentiary, and judgment was accordingly entered. The defendant appeals.

*Stone & Gilliland* and *E. Starbuck*, for appellant.

*A. J. Baker, Attorney-general*, for the State.

SEEVERS, J.—The indictment was found and presented in October, 1883. On the morning of the eighteenth day of August, 1878, William Doran and one Tynan were found dead on or near the track of the Kansas City and Council Bluffs Railroad, about five miles from the town of Bartlett.

The evidence tended to show that they were both killed by being shot with a gun in the hands of some one, loaded with powder and buckshot. One McCrary had been indicted, tried and convicted for the same crime, and was imprisoned in the penitentiary at the time the defendant was indicted and tried. He was introduced as a witness on the part of the state, and testified that about a week prior to the murder he, defendant and one Egan met in a back room in the saloon of the latter, in Bartlett, and it was then agreed that McCrary should procure a gun, and take it to a named place near the railroad on the next Saturday evening, along which it was expected Doran would pass, and give the gun to defendant, who agreed that he would kill and murder Doran. McCrary testified that he procured the gun, loaded it, and delivered it to the defendant at the place agreed upon, and that the latter took the gun, and started up the railroad track, leaving McCrary concealed in a corn-crib. In a comparatively brief space of time McCrary saw two men passing up the track in the direction the defendant had gone, and in about fifteen minutes after they passed McCrary testified that he heard two shots, and that in a short time the defendant returned, and said that he had killed them, and said that he had killed both because one of them had seen him, and he was afraid he would give him away. The whole evidence tends to show that the killing took place, in all probability, after six o'clock in the evening. McCrary testified that he took the gun, and returned to his home, a mile or more distant. The defendant was in Bartlett that same evening, and McCrary was there the next morning. It is not deemed necessary to state where McCrary testified he procured the gun, or how he reached the place agreed upon, or the route traveled when he left there after the murder. McCrary testified that, prior to the meeting in Egan's saloon, he had been charged with the crime of robbery, and had been admitted to bail, and that Egan said, at the meeting in the saloon, that if he (McCrary) would get the gun, and give it to the defendant at the place

agreed upon, he (Egan) would give him $100, and get two good lawyers to defend him when tried for the robbery. The motive for the murder on Egan's part was, as McCrary testified, that Doran had threatened to burn his saloon; and this, or the robbery of Doran, constituted the motive for the murder. The defendant was a witness in his own behalf, and he denied the evidence of McCrary, and he introduced evidence tending to establish an *alibi*.

The foregoing is, in substance, the direct evidence upon which the defendant was convicted. There was, however, evidence introduced by the state, the primary object of which was the corroboration of McCrary; but, under the instructions of the court, it becomes material to inquire whether such evidence is sufficient to warrant the finding of the jury if the evidence of McCrary is eliminated. It will be conceded that there are two theories upon which the state may claim a conviction. One is that the defendant committed the murder, and the other that he conspired with and aided some other person to do so. The court instructed the jury in these words: "If McCrary's evidence is sufficiently corroborated by other testimony in the case tending to connect the defendant with the commission of the crime, and you are satisfied to a moral certainty, by a consideration of all the evidence in the case, including that of McCrary, that the defendant is guilty, you should convict him; or, if the testimony is such that, disregarding the witness McCrary's evidence entirely, you are still convinced to a moral certainty by the remaining testimony that the defendant is guilty, you should convict him. But, unless one of these two conclusions above stated is reached, the defendant cannot be convicted."

In 1879 the defendant was convicted of the crime of assault with intent to commit murder, and was sentenced to the penitentiary. He and McCrary were there at the same time. Their intercourse was limited, and they were not permitted to see and converse with each other except in the presence of

the guards or other persons. One Carbant, a guard in the penitentiary, testified that he said to the defendant, "You must be going out pretty soon?" The defendant replied, "Yes; if that   *   *   *   over the shoe contract does not give me away." McCrary was engaged on the shoe contract at that time. McKinney, another guard, testified that he saw "five or six notes" to which the defendant's name was signed, which were written to McCrary. The witness states that he thinks he knew the defendant's writing, but he does not testify that the notes were written by him; but it is possible that such an inference can be drawn from his evidence. The notes were not introduced in evidence for the reason they could not be found. They were written on a certain kind of paper to which McCrary had access, but the defendant had not. It may be that such paper might have been given to him by McCrary or some other convict, but there is no such evidence. The witness testified that "the contents of the note from Clouser to McCrary were to keep still, and not to give him away; that, if he couldn't get McCrary out any other way, he would come at night and get him out." Langdon, a convict in the penitentiary, testified that he told the defendant that he (defendant) "did a very foolish thing in going before the grand jury and testifying, and not to come to court afterwards would attract attention." The defendant replied that "he knew it looked bad, but he didn't like to stay away for fear of being arrested, and if he was arrested he could not prove where he was a part of that day." Barr, a guard in the penitentiary, testified that the defendant gave him a note from McCrary, the contents of which he was unable to state fully; but, as he recollected, McCrary asked the defendant to get "permission to meet him in his cell; that they were going to put up a job on him and get him into trouble as soon as his time was out, and to see him, and he would arrange that, and he could avoid that, or something of that nature." One Carnes had a conversation with the defendant the day after he "came back from the

penitentiary," and he asked the defendant about McCrary, to which defendant replied that "he and McCrary had agreed not to talk together, and that he was going out west if some * * * rascal didn't give him away."

One Creech testified that he saw defendant at Bartlett the evening Doran was killed, and that defendant said he had a "considerable racket with Doran at the stone quarry that day," and that Doran had said everybody in Bartlett were thieves and robbers, and that he intended to "bring his gang down, and clear the place out or burn it up." Creech further testified that about nine or ten o'clock the next morning the defendant "came in excited, and asked me if I would stay by him. I said, 'Of course.' He told me that Doran and another man had been killed up the railroad track the evening before, and he was afraid it would be laid to him, from the fact that he had that row with Doran."

There is evidence tending to show that about twelve o'clock it was known in Bartlett that Doran had been killed, and we have been unable to discover any evidence tending to show that it was known before that time. It, however, should be stated that the witnesses who testified as to the time the conversation and other occurrences took place make no pretense of being definite and certain in relation thereto, and the same were had and occurred six years prior to the time. The state claims that the defendant did not have a quarrel with Doran on the day of the murder; but the evidence relied on, as we understand, is of a negative character and concedes that there might have been some difficulty between them at that time.

When McCrary came to Bartlett the morning after the murder, he and the defendant were together, and had some conversation apart from others; and they, with the mother of defendant, were together for some time in a tavern kept by defendant's parents.

We may have failed to set out all the evidence, in addition to that of McCrary, relied on by the state, but we feel sure that the foregoing is a full statement of the most material

portions thereof. There are cogent reasons urged by coun-
sel for the defendant why full faith and credit should not be
given to the evidence above stated, which we refrain from
mentioning. In considering the question above stated, it
must be assumed that there is no evidence tending to show
the conspiracy, or that the defendant murdered Doran, unless
the same can be legitimately inferred from the evidence last
above stated, the primary object of which was the corrobora-
tion of McCrary.

It will be conceded that it would not be proper to select
each item of evidence, and, isolating it from the other testi-
mony, say that, standing alone, it would not be sufficient to
authorize the instruction given the jury, or the conviction
of the defendant; but the whole evidence should be consid-
ered together in order to ascertain whether the conviction
can be sustained. The rule, of course, is that the evidence
must be sufficient to a "moral certainty," as the court said;
that is, the guilt of the defendant must be established beyond
a reasonable doubt. The evidence relied on by the state
must with reasonable certainty indicate or point out this par-
ticular crime, and that the defendant had knowledge of and
aided in its commission; that is, he must have known of the
crime prior to its commission. Knowledge afterwards
obtained is not sufficient. If the evidence can, upon any
reasonable hypothesis, be explained consistent with innocence,
the defendant is entitled to the doubt that might be created.
Not only so, but he cannot be called upon to give any
explanation, unless the evidence is such as to connect him
with the commission of the offense charged with the requisite
certainty. Mere suspicion, or grave suspicion, is not suffi-
cient.

The evidence relied on is circumstantial or inferential, and
consists of isolated declarations and conduct, from which the
requisite deduction must be drawn. His statements that he
feared McCrary would inform on him may have related to
some other crime as well as this, or he may have had reason

to believe that McCrary would falsely accuse him, with the hope of receiving favorable consideration for so doing. What he told Creech has no tendency to prove his guilt, unless it can be said to a "moral certainty" that there was no quarrel with Doran, or that he spoke of the murder before it was known to others. The evidence as to the quarrel is not sufficiently negatived by the state, nor is the inference that the murder was not known by some persons in Bartlett when the defendant made the declarations he did to Creech. The latter says the defendant "came in" excited. Something caused such excitement. It has the appearance of being an excitement presently caused. But the murder of Doran and Tynan did not astonish Creech. At least, he testified to nothing of the kind. The strong probability is that he had heard it before. The conversation was about nine or ten o'clock, and it is said that about twelve o'clock the news became public in Bartlett that Doran had been killed. The witnesses testified six years after the occurrences stated by them. A mistake as to the time a thing may have taken place after such a lapse of time may have been made. The defendant is entitled to the doubt.

Taking the evidence all together, we feel constrained to say, after much consideration and reflection, that it fails to establish the guilt of the defendant; and that, excluding entirely the evidence of McCrary, it is insufficient to authorize a conviction, and the jury should have been so instructed.

REVERSED.