UNITED STATES v. STEINMAN.

Circuit Court of Appeals, Third Circuit. October 6, 1909.)

No. 53.

**1. BANKS AND BANKING (§ 256\*)—FUNDS—"WILLFUL MISAPPLICATION."**

"Willful misapplication" of the funds of a national bank, in order to constitute an offense denounced by Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497), must be a willful misapplication for the use or benefit of accused, or of some person or company other than the banking association, with intent to injure and defraud the association, or some other body corporate or natural person, being entirely different from acts constituting an official maladministration, subjecting the bank to a forfeiture of its charter, as provided by section 5239 (page 3515).

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 964; Dec. Dig. § 256.\*

For other definitions, see Words and Phrases, vol. 8, pp. 7482–7483.]

**2. BANKS AND BANKING (§ 256\*)—MISAPPLICATION OF FUNDS—OVERDRAFTS.**

An unintentional overdraft by a depositor in good standing and possessing ample means to pay, or an overdraft to be paid pursuant to a prior agreement resting on abundant credit, does not constitute a willful misapplication of a national bank's funds, in violation of Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497).

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 964, 965; Dec. Dig. § 256.\*]

**3. BANKS AND BANKING (§ 257\*)—NATIONAL BANKS—MISAPPLICATION OF FUNDS—EVIDENCE.**

In a prosecution for aiding and abetting the officers of a national bank to willfully abstract the funds of the bank by means of certain overdrafts, evidence that prior to the making of such overdrafts it was agreed that the bank should furnish funds for the operations of certain corporations in which accused and the bank's president and cashier were officers, and that from time to time notes should be given by such corporations to take up the overdrafts, and that at the time of the advances the value of the corporation's property was more than $300,000, while the overdrafts aggregated only $30,872.24, was admissible to show absence of criminal intent.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 257.\*]

**4. BANKS AND BANKING (§ 257\*)—NATIONAL BANKS—MISAPPLICATION OF FUNDS—INSTRUCTIONS.**

In a prosecution for aiding and abetting the willful misapplication of the funds of a national bank by its officers by overdrafts, an instruction that an arrangement by which the cashier and president of a banking institution allows its funds to be taken out is not a justification, since the funds of a national banking institution can only be taken out by the action of its board of directors, and that if by the paying of the checks constituting the overdrafts, or any of them, either the money of the bank was removed from its resources, or its capital reduced, or its charter endangered, any one of such things would be sufficient to warrant the jury in finding a misapplication with intent to injure the bank, was erroneous.

[Ed. Note.—For other cases, see Banks and Banking, Dec. Dig. § 257.\*]

In Error to the District Court of the United States for the Western District of Pennsylvania.

E. H. Steinman was convicted of aiding and abetting the willful abstraction of the funds of a national bank, and he brings error. Reversed.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

172 F.—58

George C. Burgwin, Jno. E. Kunkle, and Edward E. Robbins, for plaintiff in error.

R. M. Gibson, Asst. Dist. Atty., for the United States.

Before GRAY and BUFFINGTON, Circuit Judges, and LANNING, District Judge.

BUFFINGTON, Circuit Judge. In the court below E. H. Steinman was convicted on an indictment charging him, under Rev. St. § 5209 (U. S. Comp. St. 1901, p. 3497), with aiding and abetting Charles E. Mullin, cashier of the Farmers' & Mechanics' National Bank of Mt. Pleasant, Pa., to willfully abstract the funds of said bank. On the imposition of sentence, Steinman sued out this writ of error.

The abstractions charged in the indictment consisted of overdrafts of the Acme Lumber & Supply Company aggregating $30,782.24. Steinman was not an officer of the bank. He was an officer and stockholder of the Acme Lumber & Supply Company, the Anchor Glass Company, and the Searchlight Manufacturing Company, three corporations engaged in manufacturing, building, and real estate operations at Mt. Pleasant. The proofs show that the alleged value of the properties of said companies was upwards of $300,000. In order to obtain further means for the operations of these companies, he applied to Hissem, the president, and Mullin, the cashier, of the bank, both of whom had stock in these companies. There were certain transactions in reference to the bonds of these companies which need not be detailed here; but the result of their negotiations, so far as pertinent to the questions raised by the assignments of error, was that the three companies were to be furnished funds as they were needed for their pay rolls and operations, and that, as the particular amounts to be finally apportioned to each company could not be determined at the time, the advances were to be made to the general account of the Acme Lumber & Supply Company, and that, as its account was from time to time overdrawn, notes were to be given by such of the companies as had used the funds to take up these overdrafts. On the trial, Steinman, in common with the other defendants, offered to prove the value of the property of the Acme Lumber & Supply Company, the Anchor Glass Company, and the Searchlight Manufacturing Company, whose notes were given as collateral to secure the payment of said checks according to the arrangement made before the checks were issued, "for the purpose of showing that there was no fraudulent intent to misapply the funds of the bank—a criminal intent being necessary to justify a conviction." This offer was objected to by the government as "incompetent, irrelevant, and immaterial to the issue, and not tending to throw light upon the intent of the defendants in paying out the moneys charged in the indictment as having been wrongfully misapplied by the defendants." To the court's action in sustaining this objection, exception was taken, and the court's ruling is here assigned for error. The substantial character of proof herein offered appears elsewhere in the record, showing that the value of the property of the three companies at the time of these advances was alleged to be more than $300,000. In its general charge, the court also said:

"An arrangement by which the cashier and the president of a banking institution allow the funds to be taken out is not a justification, either on the part of the president and cashier or on the part of a person dealing with the president and cashier. The funds of a national banking institution can only be taken out by the action of the board of directors."

And this also is assigned for error.

After careful consideration, we are of opinion the defendants were entitled to give in evidence all matters tending to show their good faith in the transaction in question, and that the overdrafts were not willful abstractions and misapplications under section 5209. An overdraft of an account is not per se and necessarily an abstraction of the bank's funds under section 5209 by the drawer of a check who has not funds to meet it, nor is the payment of such overdraft check by an executive officer of the bank, without action by the board, necessarily a misapplication under such section. Indeed, in Bolles on Modern Banking, p. 199, it is said:

"Generally, two kinds of overdrafts are as clearly justified as any other kind of a loan: (1) An unintentional overdraft by a depositor in good standing, and possessing ample means to pay; (2) an overdraft to be paid in pursuance of a prior agreement, resting on abundant credit."

'It will thus be seen that the facts and circumstances attendant upon an overdraft may affect the character of the overdraft and determine whether it is criminal and within the purview of section 5209, which as we have seen concerns transactions where one "embezzles, abstracts or willfully misapplies." This is clearly shown in the cases involving that section before the Supreme Court. There the distinction is clearly drawn between acts of willful misapplication under section 5209, and those of maladministration in violation of statute section 5200 (page 3494), for example, that "the total liabilities to any association of any person * * * for money borrowed * * * shall at no time exceed one-tenth part of the capital stock of the association actually paid in," and which acts of maladministration shall under section 5239 (page 3515) subject the bank to forfeiture of its charter. Thus, in United States v. Britton, 107 U. S. 655, 2 Sup. Ct. 512, 27 L. Ed. 520, the court says:

"We are, therefore, of opinion that the willful misapplication of the moneys and funds of the banking association, which is made an offense by section 5209, means something different from the acts of official maladministration referred to in section 5239, and it must be a willful misapplication for the use or benefit of the party charged, or of some person or company other than the association, with intent to injure and defraud the association, or some other body corporate, or some natural person."

And in United States v. Northway, 120 U. S. 327, 7 Sup. Ct. 580, 30 L. Ed. 664, it is said:

"In the case of the United States v. Britton, 107 U. S. 655, 669, 2 Sup. Ct. 512, 27 L. Ed. 520, the offense of willfully misapplying the funds of a banking association, as defined by the statute, was considered with reference to the facts in that case. It was there held that a willful and criminal misapplication of the funds, as defined by section 5209, did not include every case of an unlawful application of funds, inasmuch as in the very statute itself there were other instances of unlawful misapplication, evidently not embraced within the intention of section 5209. For that reason it was held, in that case, that it was necessary to specify the particulars of the application, so as to distin-

guish that charged in the indictment as willful and criminal from those others contemplated by the statute which were unlawful, but not criminal."

Now this distinction between an unlawful act of maladministration, which, of course, misapplied the funds of the bank and subjected the bank to forfeiture of its charter, but which were not punishable under section 5209 as a willful misapplication, the court in its charge failed to draw, but, on the contrary, instructed the jury that such an unlawful act of maladministration evidenced an intent which warranted conviction. The language was:

"If by the paying of these checks, or any of them, either the moneys of the bank were removed from the resources of the bank, or its capital reduced, or its charter endangered, any one of these things would be sufficient to warrant you in finding that the misapplication was with intent to injure the banking institution."

Under the facts of the case there was really nothing left for the jury to pass on. Taking these overdrafts under the arrangement alleged, they were loans of more than one-tenth of the capital of the bank. In paying the checks the moneys of the bank were removed from its resources, and that they as excessive loans endangered the charter of the bank were all matters which could not be gainsaid, and from them the jury were in effect directed to infer the intent necessary in a conviction under this indictment.

Such instruction being at variance with the views expressed by the Supreme Court, we are of opinion that in this regard, as well as in ruling out the testimony mentioned, the defendant has just ground to complain, and the judgment imposed must be reversed.