STEINMAN v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit. February 8, 1911.)

No. 1,440 (69).

1. CRIMINAL LAW (§ 1192*)—APPEAL AND ERROR—REVERSAL—MANDATE AND PROCEEDINGS IN LOWER COURT—NEW TRIAL.

It does not necessarily result, from the fact that on reversal of a judgment by an appellate court the mandate does not specifically direct a venire de novo, that the judgment of reversal finally disposes of the case, so that a new trial cannot be had; but the grounds of reversal, as disclosed in the opinion of the appellate court, may be considered in determining the propriety of a second trial, especially where the mandate requires of the lower court that further proceedings be had "in conformity with the opinion and judgment of this court."

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 1192.*]

2. CRIMINAL LAW (§ 193*)—FORMER JEOPARDY—NEW TRIAL AFTER REVERSAL OF JUDGMENT.

The plea of former jeopardy cannot be interposed to a second trial of a criminal case, made necessary by the reversal of a former judgment of conviction on a writ of error sued out by the defendant.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 378; Dec. Dig. § 193.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the District Court of the United States for the Western District of Pennsylvania.

E. H. Steinman was convicted of aiding and abetting the willful misapplication of the funds of a national bank, and brings error. Affirmed.

See, also, 172 Fed. 913.

John S. Ferguson and E. G. Ferguson, for plaintiff in error.

John H. Jordan, U. S. Atty., and R. M. Gibson, Asst. U. S. Atty.

Before GRAY, BUFFINGTON, and LANNING, Circuit Judges.

GRAY, Circuit Judge. By an indictment found in the court below in 1908, Charles E. Mullin, cashier of the Farmers' & Mechanics' National Bank of Mt. Pleasant, Pennsylvania, was charged, under section 5209 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 3497), with willfully misapplying the funds of that bank with intent to injure and defraud the said banking association, for the use, benefit and advantage of a certain corporation in the state of Pennsylvania, of which the plaintiff in error, E. H. Steinman, was president, to wit, the Acme Lumber & Supply Company. By the same indictment, and under the same section of the Revised Statutes, the plaintiff in error, E. H. Steinman, and R. K. Hissem, president of the bank, were charged with aiding and abetting the said Charles E. Mullin to misapply the funds of the said bank with like purpose and intent.

There were 19 counts in this indictment, each count charging the said defendants with respect to a particular misapplication of the funds of the bank. The misapplications so charged were, in general, alleged to be the drawing of checks on the bank by the plaintiff in error, Steinman, as president of the Acme Lumber & Supply Company, which checks were alleged to have been paid by the cashier with the assent of Hissem, the president of the bank, and without the knowledge and consent of the board of directors of the said bank, all the defendants well knowing that neither Steinman nor the corporation maker of the checks had any funds in said bank upon which said checks could be drawn. Upon this indictment, all the defendants were arraigned in November, 1908, and upon trial thereon were convicted. From the judgment on this conviction, Steinman and Mullin sued out separate writs of error. As both writs were founded upon the same record and upon identical exceptions and assignments of error, that of Steinman was the only one passed upon by this court. These exceptions and assignments of error were either to the action of the court below during the trial, in the admission or rejection of testimony, or to special parts of the charge of the court recited in said assignments. There was no assignment upon any refusal of the court to give peremptory instructions to the jury, upon the whole evidence, to find for the defendant.

The case, upon assignments of the character above stated, was presented to this court, and was fully argued by counsel on both sides, and this court filed its opinion October 6, 1909 (172 Fed. 913, 97 C. C. A. 271), in which it said:

"The abstractions charged in the indictment consisted of overdrafts of the Acme Lumber & Supply Company aggregating $30,782.24. Steinman was not an officer of the bank. He was an officer and stockholder of the Acme Lumber & Supply Company, the Anchor Glass Company, and the Searchlight Manufacturing Company, three corporations engaged in manufacturing, building, and real estate operations at Mt. Pleasant. The proofs show that the alleged value of the properties of said companies was upwards of $300,000. In order to obtain further means for the operations of these companies, he applied to Hissem, the president, and Mullin, the cashier, of the bank, both of whom had stock in these companies. There were certain transactions in reference to the bonds of these companies which need not be detailed here; but the result of their negotiations, so far as pertinent to the questions raised by the assignments of error, was that the three companies were to be furnished funds as they were needed for their pay rolls and operations, and that, as the particular amounts to be finally apportioned to each company could not be determined at the time, the advances were to be made to the general account of the Acme Lumber & Supply Company, and that as its account was from time to time overdrawn, notes were to be given by such of the companies as had used the funds to take up these overdrafts. On the trial, Steinman, in common with the other defendants, offered to prove the value of the property of the Acme Lumber & Supply Company, the Anchor Glass Company, and the Searchlight Manufacturing Company, whose notes were given as collateral to secure the payment of said checks according to the arrangement made before the checks were issued, 'for the purpose of showing that there was no fraudulent intent to misapply the funds of the bank—a criminal intent being necessary to justify a conviction.' This offer was objected to by the government as 'incompetent, irrelevant, and immaterial to the issue, and not tending to throw light upon the intent of the defendants in paying out the moneys charged in the indictment as having been wrongfully misapplied by the defendants.' To the court's action in sustaining this objection, exception was taken, and the court's ruling is here assigned for error. The substantial character of proof herein offered appears elsewhere in the record, showing that the value of the property of the three companies at the time of these advances was alleged to be more than $300,000.

＊　＊　＊　＊　＊　＊　＊　＊　＊　＊　＊　＊　＊　＊

"After careful consideration, we are of opinion the defendants were entitled to give in evidence all matters tending to show their good faith in the transaction in question, and that the overdrafts were not willful abstractions and misapplications under section 5209. An overdraft of an account is not per se and necessarily an abstraction of the bank's funds under section 5209 by the drawer of a check who has not funds to meet it, nor is the payment of such overdraft check by an executive officer of the bank, without action by the board, necessarily a misapplication under such section."

Then, after referring to the distinction between acts of maladministration, which under section 5239 subjected the bank to forfeiture of its charter but which are not punishable under section 5209 as a willful misapplication of funds, and acts of willful misapplication which are punishable under said latter section, this court said that the court below had failed in its charge to draw this distinction,

"but on the contrary, instructed the jury that such an unlawful act of maladministration evidenced an intent which warranted conviction. The language was: 'If by the paying of these checks, or any of them, either the moneys of the bank were removed from the resources of the bank, or its capital reduced, or its charter endangered, any one of these things would be sufficient to warrant you in finding that the misapplication was with intent to injure the banking institution.'

"Under the facts of the case there was really nothing left for the jury to pass on. Taking these overdrafts under the arrangement alleged, they were loans of more than one-tenth of the capital of the bank. In paying the checks the moneys of the bank were removed from its resources, and that they as excessive loans endangered the charter of the bank were all matters which

185 F.—4

could not be gainsaid, and from them the jury were in effect directed to infer the intent necessary in a conviction under this indictment.

"Such instruction being at variance with the views expressed by the Supreme Court, we are of opinion that in this regard, as well as in ruling out the testimony mentioned, the defendant has just ground to complain, and the judgment imposed must be reversed."

The mandate of this court was as follows:

"In consideration whereof, it is now here ordered and adjudged by this court that the judgment of the said District Court in this cause be and the same is hereby reversed. You, therefore, are hereby commanded that such proceedings be had in such cause, in conformity with the opinion and judgment of this court, as, according to right and justice and the laws of the United States ought to be had. The said writ of error notwithstanding."

After the receipt of this mandate by the court below, the defendants, Steinman and Mullin, were again put upon their trial, upon the same indictment, and were convicted. On May 28, 1910, sentence was imposed, whereupon the present writ of error was sued out by Steinman. In the record now before us, it appears that previous to the trial, which began on May 17, 1910, to wit, May 3, 1910, the defendant, Steinman, upon a petition and affidavit, suggested to the court below the facts in regard to his former trial and conviction and the writ of error duly prosecuted by him before this court. The petition then proceeds as follows:

"That none of the evidence adduced by the government on the said trial was sufficient, in fact or in law, to convict the defendant of the offense of which he was charged under the said indictment, and said Court of Appeals thereupon said: 'Under the facts of the case there was really nothing left for the jury to pass upon; that the instruction of the lower court, "that the intent necessary to a conviction under the indictment might be inferred from evidence adduced" was erroneous, and that no intent could be inferred from such facts,' and the said Court of Appeals thereupon ordered that the judgment should be reversed, all of which will more fully appear by reference to the opinion of the said Circuit Court of Appeals as reported in [172 Fed. 913], 97 C. C. A. 271, and the said E. H. Steinman further suggests to your honorable court that he is no longer liable to trial upon the indictment in this case for the following reasons:

"First: That the reversal of the conviction in said case is in fact equivalent to a verdict of acquittal.

"Second: Because if he were again compelled to stand trial, he would be twice put in jeopardy, contrary to the law of the land."

The motion founded upon this petition and affidavit, that the said indictment should be dismissed and the defendant discharged, was upon the same day refused by the court below and exception duly noted and allowed. On May 17th, the defendant objected to the jury being sworn, on the ground that the court was without jurisdiction to try the case, and to the overruling of this objection an exception was duly noted and bill sealed. On the same day, May 17th, the defendant filed, with the consent of the court, as additional pleas, first, former acquittal, second, twice in jeopardy, third, that the judgment of the said District Court of the United States for the Western District of Pennsylvania, on his former conviction, had been reversed by the Circuit Court of Appeals without a venire de novo or procedendo, by reason whereof the said defendant could not again be tried upon the same indictment. The questions raised by these several motions and pleas

are duly presented by the assignments of error and primarily challenge the attention of this court.

That a mere reversal by an appellate court, of a judgment brought in review before it, without a specific direction for a venire de novo, finally disposes of the case in which such judgment was rendered, so that a new trial or other proceeding could not be had thereon, without reference to the reasons for such reversal, as disclosed in the opinion of the appellate court, and to the case as presented by the plaintiff in error therein, though sometimes so held, cannot be sustained. Nor do we understand counsel for plaintiff in error as supporting such a proposition. His contention, as we understand it, is that the opinion of this court in the case on the former writ of error, distinctly stated the grounds of reversal. That those grounds were not only the rejection of certain testimony offered by the defendant below, in regard to the value of property owned by the corporations whose checks were negotiated with the bank by the defendant, and which, considered as security for the overdrafts referred to in the indictment, might have a bearing upon the intention to defraud the bank, charged in the indictment; but that, in the opinion of the court, upon all the evidence in the case, the jury should have acquitted the defendant. To quote the language of plaintiff in error's brief:

"It may be conceded that if this was the only question" (the propriety of the rejection of the evidence above referred to, by the court below) "involved in the case, even upon this plea the appellate court might make an order, nunc pro tunc, sustaining the right of the government to retry the case, upon the ground that the reversal did not go to the roots of the case, but only to the question of the admission or rejection of evidence, and on the further ground that it was not the intention of the reversing court, that the defendant should by such means escape the just consequences of a crime, if he were guilty of that crime.

"The argument here, however, goes further and goes deeper. The government put in its case. It gave to the jury all the evidence which it had upon which it claimed to be warranted in asking the jury to convict the defendant of a crime against the statutes of the United States. The appellate court said, in words that cannot be misunderstood: 'That upon the facts of the case there was nothing left for the jury to pass upon; that no criminal intent could be justly inferred from the facts produced on the part of the government,' and that for that reason, the judgment was reversed."

It is apparent from the extracts given above, from the opinion of this court in the former case, that counsel for the plaintiff in error has entirely misapprehended the meaning of that opinion. The court nowhere said, either verbally or in substance, "that no criminal intent could be justly inferred from the facts produced on the part of the government," and the language of the court that is referred to, when read in connection with its context, is not susceptible of the meaning attributed to it by the plaintiff in error. As has already been pointed out, the court, after adverting to the fact that the court below in its charge had failed to draw the distinction between an unlawful act of maladministration, under section 5239 (page 3515) and willful misapplication of the funds of the bank, under section 5209, says:

"But, on the contrary" (the court) "instructed the jury that such an unlawful act of maladministration evidenced an intent which warranted conviction. The language was: 'If by the paying of these checks, or any of

them, either the moneys of the bank were removed from the resources of the bank, or its capital reduced, or its charter endangered, any one of these things would be sufficient to warrant you in finding that the misapplication was with intent to injure the banking institution.'

"Under the facts of the case there was really nothing left for the jury to pass on. Taking these overdrafts under the arrangement alleged, they were loans of more than one-tenth of the capital of the bank. In paying the checks the moneys of the bank were removed from its resources, and that they as excessive loans endangered the charter of the bank were all matters which could not be gainsaid, and from them the jury were in effect directed to infer the intent necessary in a conviction under this indictment.

"Such instruction being at variance with the views expressed by the Supreme Court, we are of opinion that in this regard, as well as in ruling out the testimony mentioned, the defendant has just ground to complain, and the judgment imposed must be reversed."

This was far from saying "that no criminal intent could be justly inferred from the facts produced on the part of the government." It merely criticises the charge of the court in the passage quoted, as being in effect a direction to infer the intent necessary to conviction from certain facts that were admittedly proved. It, however, leaves to the jury the duty of finding a guilty intent, if such there was, from all the evidence in the case. It was because the court below, in the language quoted, seemed to take away from the jury the duty of considering all the evidence in the case, in order to determine, one way or the other, the question of guilty intent, that this court reversed its judgment. Under such circumstances, the reversal manifestly made necessary a new trial, in which all the evidence pertinent to this issue might be considered.

Moreover, the court below had apparently not been asked to give peremptory instructions to the jury to find for the defendant, upon all the evidence. At all events, as we have said, there is no assignment of error that would have required the court to consider whether, under all the evidence, the verdict should have been for the defendant.

We think the reversal in pursuance of such an opinion, and the mandate accompanying the same, was correctly interpreted by the court below as a direction for a venire de novo. It would be regarding form and not substance to hold otherwise. The mandate required that the case should be further proceeded with "in conformity with the opinion and judgment of this court." The presentation of the case to the Court of Appeals and the opinion of that court admitted of no other construction than that was given to them by the court below. To hold otherwise would be to defeat justice on a technicality and to subordinate substance to form.

The doubt of the propriety of a new trial, in cases such as the present, has arisen probably from the practice of appellate courts to specifically direct a venire de novo, where the grounds upon which the reversal is ordered render it proper to do so. It has also been suggested that, where a court below has doubts as to the propriety of a new trial, where not specifically directed, it may order an application to be made to the appellate court for such an order, nunc pro tunc. But, whatever the earlier decisions may have been, and notwithstanding some later cases which seem to support a different conclusion, the great weight of reason and authority permits the grounds of the re-

versal, as disclosed in the opinion of the court, to be determinative of the propriety of the second trial, especially where the mandate accompanying the reversal, as in the present case, requires of the lower court "that such proceedings be had in said cause in conformity with the opinion and judgment of this court, as according to right and justice and the laws of the United States ought to be had." State v. Clouser, 69 Iowa, 313, 28 N. W. 615; Ryan v. Tomlinson, 39 Cal. 639; Myers v. McDonald, 68 Cal. 162, 8 Pac. 809; In re Road in Benzinger Twp., 135 Pa. 176, 19 Atl. 942.

It is not without significance that, in the case of Hopt v. Utah, 104 U. S. 631, 26 L. Ed. 873, Id., 110 U. S. 574, 4 Sup. Ct. 202, 28 L. Ed. 262, Id., 114 U. S. 488, 5 Sup. Ct. 972, 29 L. Ed. 183, and Id., 120 U. S. 430, 7 Sup. Ct. 614, 30 L. Ed. 708, in which the plaintiff in error had been four times convicted of murder in the state court, though the Supreme Court of the United States reversed the judgments below without directing a venire, no objection was made to the new trial on that account.

In addition to what we have already said, it is only necessary to add that the plea of "twice in jeopardy" is without merit, for the obvious reason that the second trial as to which it was pleaded, was brought about by the defendant's own act, in suing out his writ of error, for the reasons stated in his specification thereof, and by the consequent reversal of the judgment on the grounds stated in the opinion of the court. On this question, the authorities are abundant and need not be cited.

By the fifth assignment of error, the court is alleged to have erred in refusing the second point presented on behalf of the defendant, to wit, that under all the evidence in the case, the defendant, Steinman, must be acquitted. In regard to the question thus raised, a careful examination of all the evidence, as made necessary by this assignment of error, has convinced us that it cannot be sustained. It is impossible to say, under our view of the case, that there was no evidence to go to the jury bearing upon the intent with which the various acts charged to have been in violation of law, were committed by the defendant. The charge of the court was eminently fair to the defendant, and every point in his favor was duly submitted by the trial judge to the consideration of the jury.

The other assignments of error, relating to the admission and rejection of testimony, and to certain portions of the charge of the court, are without merit, and it would only unduly lengthen this opinion to discuss them in detail.

The judgment below is therefore affirmed.