Argued February 16, affirmed March 23, rehearing denied April 20, 1926.

# STATE v. CHESTER C. KUBLI.

## (244 Pac. 512.)

**Embezzlement—One Having No Funds in Bank, Aiding Cashier of Bank in Misappropriating Bank Funds by Having His Check Cashed, is Guilty of Embezzlement (§ 6187, Subd. [c], Or. L.).**

1. Under Section 6187, subdivision (c), Or. L., specially providing that he who aids or abets a bank officer in misappropriating bank funds shall be punished in same manner as officer, one having no funds in bank aiding cashier in misapplying funds of bank in payment of his check is guilty of embezzlement.

**Indictment and Information—Indictment Against One Aiding in Embezzlement Setting Out Facts as They Occurred, and in Language of Statute Held Sufficient (§ 6187, Subd. [c], Or. L.).**

2. Indictment under Section 6187, subdivision (c), Or. L., for aiding and abetting in commission of embezzlement of bank funds, setting out facts as they occurred, and describing same in language of statute, is sufficient.

**Indictment and Information.**

3. Averments of indictment for statutory crime are sufficient, if they follow words of statute.

**Statutes—Amendatory Act Condemning One Aiding Officer in Misappropriating Bank Funds Comes Within Title of Act "Regulating Business of Banking" (Laws 1911, p. 225; Laws 1907, p. 262; Const., Art. IV, § 20).**

4. Amendatory act, Laws of 1911, page 225, condemning aider and abettor of officer of bank, misappropriating bank funds, comes within title to Banking Act "regulating the business of banking" and does not violate Constitution, Article IV, Section 20, requiring subject of act to be expressed in title.

**Embezzlement—Evidence of Unpaid Chattel Mortgages of Defendant Prosecuted for Aiding in Misappropriating Bank Funds by Having Check Cashed Without Funds to Meet It, Held Properly Admitted (§ 6187, Subd. [c], Or. L.).**

5. In prosecution for aiding in misappropriating funds by drawing check on bank without having funds therein, under Section 6187, subdivision (c), Or. L., evidence of unpaid chattel mortgages of defendant having a large overdraft in bank was properly admitted to show defendant's irresponsible financial condition, which was known to the cashier.

---

1. See 3 R. C. L. 511.
3. See 14 R. C. L. 185.

**Embezzlement—Jury may Consider All Evidence of Financial Condition of Defendant, Charged With Aiding Misappropriation of Bank Funds by Drawing Check Without Funds in Bank, to Determine Intent With Which Check was Drawn.**

6. Jury may consider all evidence of financial condition of defendant, charged with aiding misappropriation of bank funds by drawing check without having funds to meet it, to determine intent with which check was drawn.

**Embezzlement—Whether Overdraft is a Crime Under Statute Making Aider in Misappropriating Bank Funds Guilty of Embezzlement is a Question of Fact for Jury (§ 6187, Subd. [c], Or. L.).**

7. Whether overdraft is a crime or not under Section 6187, subdivision (c), Or. L., making one aiding bank officer in misappropriating bank funds guilty of embezzlement is not a question of law but one of fact for jury.

**Criminal Law.**

8. Assignment of error "that court erred in its failure and refusal to grant defendant a new trial" presents no ground for appeal.

**Criminal Law—No Error can be Claimed in Pronouncing Judgment Against Defendant, Where Based on Valid Indictment and Verdict of Guilty Supported by Competent Evidence (§ 6187, Subd. [c], Or. L.).**

9. Where court had before it a valid indictment for embezzlement under Section 6187, subdivision (c), Or. L., and a verdict of guilty based on competent evidence, it cannot be said that court erred in pronouncing judgment against defendant.

**Criminal Law.**

10. Questions discussed in brief, not presented by assignments of error or bill of exceptions, cannot be considered on appeal.

---

Criminal Law, 16 C. J., p. 123, n. 15.

Embezzlement, 20 C. J., p. 433, n. 63, p. 457, n. 56, p. 459, n. 68, p. 485, n. 58, p. 486, n. 60, p. 488, n. 71.

Indictments and Informations, 31 C. J., p. 708, n. 29, p. 740, n. 89, p. 90, 91, 96.

Statutes, 36 Cyc., p. 1028, n. 24, p. 1029, n. 25, p. 1049, n. 18.

From Jackson: F. M. CALKINS, Judge.

In Banc.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief and oral argument by *Mr. Gus Newbury.*

---

8. See 2 R. C. L. 162.

For respondent there was a brief and oral arguments by *Mr. Clarence D. Phillips* and *Mr. Newton C. Chaney*.

BURNETT, J.—The defendant was indicted as one who with intent to injure the Bank of Jacksonville aided and abetted the cashier of that institution in the misapplication of its funds, in that the officer paid a check drawn by the defendant on said bank in the sum of $50, knowing that the drawer had no moneys, funds, credits or property in the bank to pay the check. The statute under which the indictment was drawn is subdivision (c) of Section 6187, Or. L., reading thus:

"*Embezzlement.* Every owner, officer, director or employee of any bank who embezzles, abstracts, or willfully misapplies any of the money, funds, credits, assets or property of the bank, whether owned by such bank or held in trust, or who without authority of the board of directors of such bank issues or puts forth any certificate of deposit, draws any order, draft or bill of exchange, makes any acceptance, assigns any note, bond, draft, bill, bill of exchange, mortgage, judgment or decree, or who makes any false entry in the books or statements of the bank with intent in either case to injure or defraud the bank or deceive any officer of such bank or any other person appointed to examine the affairs of said bank, or any person who with like intent aids or abets any owner, officer, director or employee of any bank in the violation of this section, upon conviction thereof, shall be imprisoned in the state penitentiary for not less than one year or more than twenty years, at the discretion of the court."

A jury trial resulted in the conviction of the defendant and he appealed.

The assignments of error are four in number, reading thus:

"That the Court erred in overruling defendant's demurrer to the indictment.

"That the Court erred in permitting the introduction of certain evidence as particularly objected to by the defendant in the trial of the said cause, and more particularly as follows, to-wit: That the Court erred in admitting in evidence certain mortgages, being Exhibits A, B, C, D and E, which are particularly set out in the Bill of Exceptions.

"That the Court erred in its failure and refusal to grant the defendant a new trial.

"That the Court erred in pronouncing judgment against the defendant."

The indictment reads thus:

"Chester C. Kubli is accused by the Grand Jury of the County of Jackson, by this indictment of the crime of aiding and abetting W. H. Johnson, an officer of a state bank, to injure and defraud the bank, committed as follows:

"That said W. H. Johnson on the 7th day of August, 1920, in said County of Jackson and State of Oregon, then and there being and being then and there an officer and the cashier of the Bank of Jacksonville, a state bank duly created, organized and existing under and by virtue of the laws of the State of Oregon and doing and carrying on a banking business in the town of Jacksonville, in the county and state aforesaid, and said W. H. Johnson as such officer and cashier then and there having the custody, control and care of the moneys, funds, credits and property of said bank, did then and there by virtue of being an officer of said bank and by virtue of his office as cashier of said bank, wrongfully, unlawfully, feloniously, and willfully misapply and convert to the use, benefit, gain and advantage of Chester C. Kubli certain moneys, funds, credits and property of said bank of the amount and value of fifty dollars, lawful money of the United States of America, a more particular description of which is to this grand jury unknown, from and out of the moneys, funds, credits and property of said bank, by then and there paying

and causing said sum to be paid out of such moneys, funds, credits and property of said bank on a check in said sum drawn upon said bank by Chester C. Kubli and signed by said Chester C. Kubli, and dated July 31, 1920, which check was then and there by said W. H. Johnson cashed and paid out of such moneys, funds, credits and property of the bank, he, the said W. H. Johnson well knowing that the said Chester C. Kubli had no moneys, funds, credits or property in said Bank of Jacksonville to pay said check, and that the said bank had received no consideration for the same and that he, the said Chester C. Kubli, was not entitled to withdraw said fifty dollars, or any portion thereof, or any other sum whatsoever from said bank; that all of said acts as aforesaid were done by said W. H. Johnson with the intent to injure and defraud said bank, contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon.

"And the grand jury further charges that the said Chester C. Kubli on the 7th day of August, 1920, in the County of Jackson and State of Oregon, then and there being, did then and there wrongfully, unlawfully, feloniously and willfully and with intent to injure and defraud said bank, aid, abet, incite, counsel, and procure the said W. H. Johnson, officer and cashier as aforesaid, to convert, and willfully misapply the moneys, funds, credits and property of the said bank in manner and form as aforesaid, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

1. In *State* v. *Fraser*, 105 Or. 589 (209 Pac. 467), in an opinion by Mr. Justice McCOURT, it is held that by virtue of the sections abolishing the common-law distinctions between principals and accessories before the fact in felonies, and providing that all persons concerned in the commission of a crime, whether they directly commit the act constituting the crime,

or aid and abet in its commission, though not present, must be indicted, tried and punished as principals, * * * a person who cannot alone commit a crime defined by statute may, by aiding and abetting a person within the class against which the statute is directed, render himself criminally liable and subject to the punishment prescribed by the statute, even though such penal provisions do not, in express terms, extend to persons not within the class of those by whom the crime may be directly committed. The present law, however, is stronger against the defendant than the precept laid down in the opinion just noted, for it expressly says that he who aids or abets a bank officer with the like intention of injuring the bank shall be punished in the same manner so that nothing is left to implication or construction. The statute directly denounces aiders and abetters. As to the manner of pleading, the opinion goes on to state thus:

"Where a person is proceeded against for aiding and abetting another in the commission of a crime, the provisions of Sections 1458 and 2370, Or. L., render it admissible, at the election of the pleader, to charge the accused directly as a principal, or to set out the facts constituting the offense as nearly as may be, precisely as they occurred"; citing numerous precedents.

2, 3. In the instant case the pleader has pursued the latter course. As described in the language of the statute, in the act committed by the bank officer, and likewise in the words of the enactment, is averred the criminality of the defendant. As a general rule the averments of an indictment for a statutory crime are sufficient if they follow the words of the statute. This is the principle of criminal pleading observed in Oregon: It is more liberal than the practice of

the federal courts as embodied in the cases cited in the defendant's brief. In the matter of pleading, therefore, the present indictment is sufficient.

4. As originally framed, the act governing the banking business contained no direct inhibition against one who aided and abetted an officer in defrauding a bank, and it was only by virtue of the act of February 23, 1911, embodied in · Chapter 171, Laws of 1911, that those who aid and abet an officer in his misapplication of the bank's funds are included in the express condemnation of the statute. The act of 1911 was entitled ''An Act to Amend'' certain sections of Lord's Oregon Laws, being the codified form of the original banking act, and it is now contended that the amendment of 1911 respecting aiders and abetters was not within the scope of the title of the original act, and hence unconstitutional in the absence of legislation amending that title. Section 20 of Article IV of the state Constitution declares that:

''Every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title.''

The title of the original act reads thus:

''Defining what shall constitute a bank and banking business in the State of Oregon, regulating the business of banking, establishing a Board of Bank Commissioners, providing for the appointment of a State Bank Examiner, prescribing his qualifications, duties and compensation, fixing the capital required to do a banking business, and providing for the examination, regulation and control of banks and banking business conducted by persons, firms and corporations, other than National banks, and fixing the fee for such examination; fixing the qualifications and liability of officers, stockholders and directors of banking corporations; and the liability of banks for money paid on

forged and raised checks; fixing the qualifications and liability of persons, firms and corporations in the banking business; providing for the payment of money on deposit to minors and other persons under disability and on joint account; providing for the sale and cancellation of certificates of stock for unpaid assessments; prohibiting banking except under the provisions of this act; providing for the liquidation of banks and the distribution of the assets thereof; providing for giving publicity to deposits more than seven years old; making an appropriation for carrying out the purpose of this act, and prescribing penalties for the breach of any of the provisions thereof, and repealing all acts and parts of acts in conflict herewith.''

We note the opening phrase of this title: ''Defining what shall constitute a bank and banking business in the State of Oregon, regulating the business of banking,'' etc. It is only the subject of the act that must be expressed in the title. ''Matters properly connected therewith'' may be included in the body of the act. Under a subject expressed in ''regulating the business of banking'' it certainly is a matter properly connected therewith to provide against misapplication of a bank's funds by its officers and to establish punishment for those who aid and abet them in such malfeasance. Under such a title it would have been perfectly proper to include in the original act the language found in the enactment of 1911. This is a fair construction of the act and its title and avoids the undesirable result of the judiciary overturning an act of the legislative branch of the government. As concerns the constitutionality of the act of 1911, the indictment is sufficient and the demurrer to it was properly overruled.

5. At the trial there was evidence to the effect that for many months prior to the drawing of the

defendant's check mentioned in the indictment he had continually overdrawn his account until his overdraft amounted to upwards of $40,000, and that it kept increasing instead of diminishing. The state offered in evidence certain chattel mortgages, executed by the defendant, some of which were renewals of former like obligations, amounting to nearly $20,000, none of which had been paid and were yet subsisting obligations against him. We cannot say, as a matter. of law, that an overdraft is or is not a crime. The thing forbidden in the statute is the misapplication of the money, funds, credits, assets or property of the bank with the intent to injure or defraud the bank. The criminality rests principally in the intent with which the act was performed. It is one thing for a man financially sound by inadvertence to overdraw his account. It is quite another thing for a man who knows himself to be hopelessly involved so that he can never pay to draw his check on a bank where his account is already largely overdrawn. There would be no protection for the stockholders and depositors of any bank if the officers in charge of its business could be allowed to parcel out its funds to people who are utterly irresponsible beyond hope of financial recovery. It is competent, therefore, to show to the jury the kind of man, financially, who drew the check upon which the money was paid and to show likewise that the officer who paid the check knew that condition of the drawer. To that end it was competent to introduce the unpaid chattel mortgages, to show that the defendant was irresponsible financially. The testimony indicated that the cashier of the bank knew all about that indebtedness of the defendant. If, therefore, the cashier, knowing that the overdraft of the defendant would, in the ordinary

course of affairs, result in a loss to the bank and consequently in its injury, he would be liable for a misapplication of the funds. Likewise, if the defendant knew that he himself was financially irresponsible and that the natural ordinary result of letting him overdraw his account, by means of the check described in the indictment, would result in the injury of the bank by loss of its assets, in the amount of his check, he himself would be guilty of aiding and abetting the cashier in the wrongdoing of the latter. In such a case the defendant would knowingly receive the benefit of the other's crime and so would likewise be liable under the amended banking act as an aider and abetter. It is not by a single detached transaction alone that we must judge the situation. As showing the intent, not only of the officer, but of the aider and abetter, it is competent to show what manner of man, financially, the drawer of the check was. To that end the mortgages, unpaid as they were, were competent evidence.

6, 7. The question was open to the defendant to rebut that by evidence that he was financially sound and the jury was entitled to consider all such evidence, *pro* and *con,* in determining the intent with which the drawing of the check was performed: *United States* v. *Steinman,* 172 Fed. 913 (97 C. C. A. 271). As stated, it is not a question of law whether an overdrawing of an account is a crime or not. It is one of fact for the jurors to determine under all the circumstances disclosed by proper evidence adduced at the trial.

8. As a third assignment of error it is urged "That the Court erred in its failure and refusal to grant defendant a new trial." This does not of itself present any ground for appeal.

9. On the questions presented in the assignments of error there was no fault in the proceedings up to the time of pronouncing the judgment. The court had before it a valid indictment and a verdict of "guilty" based upon competent evidence. Consequently we cannot say, in the language of the fourth assignment, "that the court erred in pronouncing judgment against the defendant."

10. The following precedents are instructive on the liability of one who draws a check upon a bank where he has no funds or credits applicable to the payment thereof, whereby he aids and abets an officer of the bank in the misapplication of its funds: *United States* v. *Hillegass,* 176 Fed. 444; *Keliher* v. *United States,* 193 Fed. 8 (114 C. C. A. 128). The questions discussed in the briefs about hearsay testimony and corroboration of an accomplice are not presented by the assignments of error or the bill of exceptions, hence we decline to consider them.

It follows that the judgment of the Circuit Court must be affirmed.

AFFIRMED.   REHEARING DENIED.