**LEFCO v. UNITED STATES, and nine
other cases.**

Nos. 5208–5216, 5222.

Circuit Court of Appeals, Third Circuit.
June 27, 1934.

Rehearings Denied in Nos. 5211, 5214–5216,
Sept. 19, 1934.
On Rehearing in No. 5209, Dec. 10, 1934.

Harry Shapiro, of Philadelphia, Pa., for
appellants Lefco, Weinroth and Allen.

Wm. F. Berkowitz, of Philadelphia, Pa., for appellants Jacob and Joseph Winderman.

Abraham Rose and Eli J. Rose, both of Philadelphia, Pa., for appellants Stone and Lindenbaum.

Harry L. Pogach, Samuel W. Salus, and Herbert W. Salus, all of Philadelphia, Pa., for appellants Schecter and Herlich.

David N. Feldman and Edward I. Weisberg, both of Philadelphia, Pa., for appellant Broker.

Charles D. McAvoy, U. S. Atty., and Thomas J. Reilly, Asst. U. S. Atty., both of Philadelphia, Pa.

William K. Goldstein, of Scranton, Pa., for appellant Weinroth on rehearing.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

A grand jury in the District Court of the United States for the Eastern District of Pennsylvania returned an indictment containing four counts framed under section 215 of the Criminal Code (18 USCA § 338) for devising schemes to defraud and using the mail to execute the schemes, and one count under section 37 of the Criminal Code (18 USCA § 88) for conspiring to commit an offense against the United States denounced by section 215. The indictment was directed against twenty persons. Four pleaded guilty; one pleaded nolo contendere; eleven pleaded not guilty; four did not answer. The eleven who pleaded not guilty were tried, convicted and sentenced. Of these, ten have appealed.

The record, which we have been required to examine at length because of the court's refusal of the defendants' motions for a directed verdict, calls for comment. It contains 497 pages of testimony for the government and none for the defendants; and 226 assignments, covering 90 pages, charging error in the government's case. While it is possible to find among the assignments bases for the questions presented in the appellants' briefs, they contain so much about every phase of a highly controversial trial and so much that is clearly unobjectionable that they tend to confuse rather than to define the issues to be decided. Local 167, International Brotherhood of Teamsters v. United States, 291 U. S. 293, 54 S. Ct. 396, 78 L. Ed. 804. Rather than taking up the unconscionable number of assignments seriatim, we have reviewed this case on the lines marked out and on the questions raised by the appellants' briefs and have given our main consideration to the rulings of the court in admitting testimony discussed in the briefs, to the sufficiency of the evidence to sustain the verdict as disclosed by the record and to the validity of the court's instructions in its charge, keeping in mind all the while that it is not every technical error but only prejudicial error which, after an examination of the entire record, justifies reversal. Judicial Code, § 269 (28 USCA § 391).

To avoid confusion which would be inevitable, and interminable, were we to recount each of the many acts of the ten defendants in the several offending undertakings, we shall tell the story of the case not with the particularity of the charges of the indictment or in the words of the witnesses but in general terms as gathered from the uncontradicted testimony.

William Lefco, alias Bill Wanamaker; Doc Farrell, who died before the indictment; Moe Feit, alias Moe Green alias Moe Rosen alias Max Goodman; and perhaps Maxwell Davis (called the main conspirators) conceived a way of making money by the fraudulent means of setting up a new merchandise business, establishing credit, buying goods on that credit, doing away with the goods, and upon default in payments going into bankruptcy, and repeating the transactions so long as fortune favored them. The scheme, long familiar to federal courts, was old and possessed novelty only in its scope and in the means set afoot to carry it out.

Some one or more of the main conspirators would approach a merchant in a small Pennsylvania city with a proposition that they go into business together. The local man afterwards became known as manager, really the "front man." The scheme of the business was fully unfolded to him so that he was in no way deceived as to its workings or as to its plainly fraudulent character.

When the proposition was accepted some one of the defendants would lease a store and pay rent in advance; another would loan the new firm some money; others would loan them merchandise. When thus established, the firm would make at least one purchase of goods and pay for them. They would then have visible assets and no visible liabilities.

The main conspirators would make a financial statement of the business and have it certified by a reputable public accountant. It would, so far as the accountant knew, be correct, but as the assets had been falsified the statement was necessarily false. The

manager or front man would then sign many copies of the statement and send them through the mail to wholesalers and jobbers. Very promptly thereafter the merchandise and money borrowed for the purpose of building up a technically correct financial statement were returned to the defendants who had made the loans. In due course purchases of merchandise were made from and credit extended to the firm by wholesalers and jobbers on the faith of the statement. When goods were received all identifying marks and labels were removed from the packages and other defendants would be summoned who (called "fence members" of the conspiracy) would purchase the goods at about fifty per cent. of the invoice prices and truck them away. Thus one group of defendants was able to purchase merchandise at about half price and, as the bills were never paid, another group obtained a clear profit on the sales and divided it among themselves. And so things went along until bankruptcy ensued. Then the main conspirators transferred their activities to another city, then to another city, and then to still another city, where the same proceedings were repeated except (there then being several businesses) new men entered into the scheme. Thus the roster grew.

Coming to particulars, the Weiss Department Store was opened in Allentown, Pennsylvania, in July, 1930. A false financial statement was issued on September 19, following. From that date to May 8, 1931, when a petition in bankruptcy was filed, $70,000 worth of merchandise was abstracted from creditors resulting in a total loss.

On September 27, 1930, with the Weiss Department Store still in operation, Wagner's Variety Store was established in Chester, Pennsylvania, and continued in business until April, 1931, when a petition in bankruptcy was filed, resulting in a loss of $65,000 to creditors.

Immediately following the bankruptcy of Wagner's Variety Store, a branch store was opened in Pottstown, Pennsylvania, which continued operations until August, 1931, resulting in a loss of $50,000 to creditors.

In May, 1931, still another branch store was established, this time in Wilkes-Barre, Pennsylvania, and did business in the same way until bankruptcy intervened in August, 1931, with a loss to creditors of $25,000.

By this time government agents became active and twenty persons who had taken part in the operations of one or more of the stores were arrested and indicted and some of them were convicted.

The general contention of the main conspirators here on appeal and the one particularly and insistently urged by the remaining defendants is (in consonance with their defense at the trial) that the court erred in refusing their motions for a directed verdict of acquittal for the reason that the evidence, if validly admitted, disclosed not one state-wide conspiracy in which all engaged, as alleged in the fifth count of the indictment, but proved four distinct and unconnected conspiracies in which different groups of the defendants separately engaged and that, in consequence, the proofs, varying from the allegations, did not sustain the count.

There is nothing new in this defense of multiple conspiracies and nothing uncertain in the law arising from such a defense. Of course, to sustain a verdict on an indictment charging one particular conspiracy the evidence must establish the conspiracy charged. Evidence that establishes another conspiracy or several other conspiracies will not sustain the verdict. From this statement of law defendants, when in extremity, commonly resort to the contention that, not knowing all the conspirators or not knowing all the others were doing, they are responsible only for what they themselves were doing when caught, and as that usually is only a part of the conspiracy, they say, the part being less than the whole, it is different from the whole and in consequence is not the conspiracy alleged in the indictment and, for lack of proofs, they should be acquitted.

Common design is the essence of conspiracy. The crime may be committed whether or not the parties comprehend its entire scope, whether they act separately or together, by the same or different means, known or unknown to some of them, but ever leading to the same unlawful result. Allen v. United States (C. C. A.) 4 F.(2d) 688, 691; McDonnell v. United States (C. C. A.) 19 F.(2d) 801; Capriola v. United States (C. C. A.) 61 F.(2d) 5, 9; Williamson v. United States, 207 U. S. 425, 28 S. Ct. 163, 52 L. Ed. 278; Pierce v. United States, 252 U. S. 239, 243, 40 S. Ct. 205, 64 L. Ed. 542. All conspirators need not be acquainted with one another, nor need they have originally conceived or participated in the conception of the conspiracy. Those who come on later and cooperate in the common effort to obtain the unlawful results become parties thereto and assume responsibility for all done before. Van Riper v. United States (C. C. A.) 13

F.(2d) 961; Coates v. United States (C. C. A.) 59 F.(2d) 173. Nor does the mere fact that conspirators individually or in groups perform different tasks to a common end split up a conspiracy into several different conspiracies. United States v. McConnell (D. C.) 285 F. 164; Wilson v. United States (C. C. A.) 190 F. 427.

■■ Whether the proofs establish the conspiracy alleged by an indictment or establish several conspiracies not alleged may, however, be a valid question and in such case it is a question of fact for the jury. United States v. McConnell (D. C.) 285 F. 164. In the instant case the learned trial judge, in response to the defense of separate conspiracies, submitted that question to the jury on instructions which were clear, direct and adequate, and the jury found the single conspiracy alleged by the indictment and accordingly convicted the defendants. On appeal there devolved upon this court the task of determining whether there was evidence which sustains their verdict. In view of the number of fraudulent stores established and the number of defendants involved in running one or more of them in a fraudulent way, we have been called upon to make a meticulously careful study of the record in order to determine what relation, if any, each of the ten defendants bore to the one broad conspiracy charged by the fifth count of the indictment. In doing this we made our own digests of the testimony against each of the ten defendants and charted the testimony against each as it bore on his participation in one and in more than one of the fraudulent adventures. These disclose, in support of the jury's finding, an intimate association, and transactions, of many defendants with other defendants; that two of the stores had transactions with each other; that some of the defendants had transactions with more than one store, some with all stores; that in the transactions, whether loaning money or loaning merchandise to bolster the false financial statements, or buying merchandise at half of invoice prices, all of the defendants (save two) acted not in relation to four separate conspiracies but, in one way or another, and in varying measure, acted in furtherance of the main conspiracy. Though, perhaps, some defendants were not acquainted with all of the others and did not know the precise part which everyone was playing, they acted with full knowledge of their own parts and of the parts of some others in furtherance of the conspiracy. Lefco, Farrell, Feit, and perhaps Davis, the main conspirators, comprised the trunk of the conspiracy. The others, ex-

cepting two we shall mention, though connected diversely with the main conspirators, acted none the less intimately with them. They constituted the branches of the conspiracy,—the branches that bore the fruit.

■■ We cannot detail in an opinion all the evidence in this hotly contested case against the government's prosecution. It will be enough to say that our charted digests disclose evidence quite sufficient to sustain the allegations of the single conspiracy alleged in the fifth count of the indictment and sufficient to sustain that finding by the jury in their verdict. In consequence, the learned trial judge did not err in refusing the motions for a directed verdict of acquittal as to eight of the defendants. The court's action in refusing a new trial is not reviewable. Although this was a tense trial in which some things were said by counsel and the court which were gratuitous digressions, they were not, in our opinion, reversibly prejudicial. In reviewing the many assignments of error on which the appellants base their briefs, we find some rulings on the admission of the government's evidence which were technically close but, if error, were not prejudicial. The learned trial court made no ruling, nor did it otherwise do anything, to prevent the defendants making a full defense.

We find no error in the charge.

■■ Four appellants, Lefco, Weinroth, Jacob Winderman, and Broker, complain that the sentences of imprisonment for three years imposed upon them, respectively, are void because longer than the maximum penalty for conspiracy prescribed by section 37 of the Criminal Code (two years). The answer to this contention depends on the offense or offenses of which the jury by their verdict found these defendants guilty. What happened at the trial was this:

The first four counts of the indictment, as we have stated, charged separate substantive offenses of devising schemes to defraud and using the mail to execute them under section 215 of the Criminal Code (18 USCA § 338). The fifth count, framed under section 37 of the Criminal Code (18 USCA § 88), charged a conspiracy to do the things denounced by section 215. Evidence was introduced in support of each of the five counts. Nevertheless the trial developed into a bitter fight on the conspiracy count. For some undiscovered reason, little attention was paid by any one to the substantive offenses alleged by the first four counts. Anyhow, when the learned trial judge charged the jury, he either inadvertently overlooked those counts or purposely pass-

ed by them for some reason of his own and instructed the jury and submitted the case only on the conspiracy count. It follows that the general verdict of the jury was a finding of guilt on that count alone. On the verdict so rendered the learned trial judge imposed upon each of the four appellants a sentence of imprisonment for three years, which was within the maximum penalty for the substantive offenses under section 215 yet beyond the maximum penalty prescribed for the offense of conspiracy by section 37 of the Criminal Code. As these men were convicted in a case submitted only under the latter provision and as the verdict follows the submission, it is plain the sentences are void.

All other defendants were sentenced within the penalty prescribed by the conspiracy statute (Criminal Code, § 37). These sentences with two exceptions are valid.

Specifically, we hold that the judgments of sentence imposed upon William Lefco, Morris Weinroth, Jacob Winderman and Benjamin Broker, be reversed and the case be remanded with direction that the four named defendants be called and resentenced within the penalty prescribed by the Conspiracy Act (Criminal Code, § 37); Dodge v. United States (C. C. A.) 258 F. 300, 306; Hammers v. United States (C. C. A.) 279 F. 265; 8 R. C. L. 239; that the judgments of sentence imposed upon Jacob Herlich, Louis Stone, Nathan Lindenbaum and Amen Allen be affirmed; and that the judgments of sentence imposed upon Joseph Winderman and Samuel Schecter be reversed for want of evidence to sustain the verdict against them.

On Amended Petition for Rehearing in No. 5209.

In proof of Morris Weinroth's connection with the conspiracy charged by the indictment, the government offered and, over objections, the court admitted testimony of several bank accounts standing in the name of E. Weinroth and showing deposits of checks drawn to that name by persons in some instances actually engaged in the conspiracy. In the petition for rehearing it is urged that there was no evidence that E. Weinroth, the payee and depositor of the checks, was Morris Weinroth, the defendant.

True, the indictment described Morris Weinroth by an alias thus: "Morris Weinroth, alias E. Weinroth, trading as E. Weinroth." Under that description, or inferential allegation, no evidence was introduced either on the matter of the bank accounts or on any other matter that we can find (even with the government's aid) to prove that the two names were borne by the same man and none to connect the bank transactions with the defendant. The learned trial judge ruled that the description of the defendant by an alias in the indictment sufficiently connected him with the bank accounts in the name of the alias and, without more, admitted testimony of the bank accounts as those of the defendant. We are constrained to hold that the admission of testimony as to checks and deposits in the name of E. Weinroth, without testimony connecting Morris Weinroth, the defendant, with them, and the submission of the case with the testimony in that state were errors.

That the errors were prejudicial, there can be no doubt. To draw an indictment for submission to the grand jury and later to a petit jury by adding an alias to the name of the accused when the draftsman is without evidence to connect one with the other tends unduly to influence the grand jury and to incite the petit jury to prejudge the case. It is not only an unfair but an inexcusable practice, one which, when coming to the attention of the trial judge, he should, for the protection of the prisoner then on trial, be prompt to correct by an admonition to the jury and never aid by substituting his own rulings for evidence essential to connect the two names with the transaction in question.

For these reasons alone we amend our previous judgment on review and reverse the entire judgment of sentence rendered by the District Court against Morris Weinroth. Obviously, this reversal does not go to the roots of the case. It is based not on a finding that there was a want of evidence to sustain the conviction but on errors in rulings by the trial court in respect to unproved incriminating transactions. Therefore, on authority of Steinman v. United States (C. C. A.) 185 F. 47, 50–53, and Kosak v. United States (C. C. A.) 54 F.(2d) 72, a venire de novo is awarded.