Georgianna DUDDING and Richard Dudding, husband and wife, Plaintiffs,

v.

Dr. Harvey E. THORPE, and Dr. Stephen Finestone, and Montefiore Hospital Association of Western Pennsylvania, Defendants.

Civ. A. No. 66–752.

United States District Court
W. D. Pennsylvania.

June 10, 1969.

Bernard Goldstone, of Routman, Moore, Goldstone & Valentio, Sharon, Pa., for plaintiffs.

George M. Weis, of Weis & Weis, Pittsburgh, Pa., for defendant, Montefiore Hospital Assn. of Western Pennsylvania.

Wilbur McCoy Otto, of Dickie, McCamey & Chilcote, Pittsburgh, Pa., for defendant, Dr. Stephen Finestone.

Daniel B. Winters, of Stein & Winters, Pittsburgh, Pa., for defendant, Dr. Harvey E. Thorpe.

## OPINION AND ORDER

MARSH, District Judge.

This suit involved a diversity negligence action against the Montefiore Hospital and two medical doctors. Georgianna Dudding, the wife plaintiff, was admitted to the defendant hospital for surgery for glaucoma. On March 16th surgery was performed on her right eye and on March 23rd surgery was performed on her left eye. After the operation on her left eye, the surgeon, Dr. Thorpe, ordered intramuscular injections of 1,200,000 units of penicillin at once, and achromycin, 500 mgm., at once. These were administered into the buttocks of the wife plaintiff by the hospital's head nurse in the recovery room; 600,000 units of penicillin were injected into each buttock, and the achromycin was injected into the right buttock. Dr. Finestone was the anesthesiologist in charge of the recovery room.

One of the injections injured the wife plaintiff's sciatic nerve in her right buttock causing her intractable pain, and considerable damages to both plaintiffs. A cordotomy performed after the lapse of one year relieved the pain but im-

posed inconvenient and embarrassing side effects.

Verdicts were returned in favor of the plaintiffs against the defendant hospital in the amount of $46,000 for the wife plaintiff and $14,000 for the husband. Verdicts were returned in favor of both the defendant doctors. The hospital has moved for judgment n. o. v. and a new trial. In our opinion both motions should be denied.

### Motion for Judgment N.O.V.

■ Since the hospital did not move for a directed verdict stating the specific grounds therefor, Rule 50(a) (b), Fed.R.Civ.P., the motion for judgment n. o. v. should be denied. Beebe v. Highland Tank and Manufacturing Company, 373 F.2d 886 (3d Cir. 1967). The hospital did present a "Motion for Instructions" containing 5 requests, two of which requested that the jury be instructed to return a verdict in favor of the hospital; both were denied. We do not think requests for charge, Rule 51, Fed.R.Civ.P., should be equated with a motion for a directed verdict. Cf. Budge Manufacturing Co. v. United States, 280 F.2d 414 (3d Cir. 1960); Massaro v. United States Lines Company, 307 F.2d 299 (3d Cir. 1962). If this be error, we think the motion for judgment n. o. v. should be denied on the merits.

■ Of course, when probing the record to determine whether there is any merit to the defendant's prayer for judgment n. o. v., the court is bound to accept the evidence and all reasonable inferences therefrom in the light most favorable to the plaintiffs, Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520 (1944), and draw all reasonable inferences against the defendant, Makowsky v. Povlick, 262 F.2d 13 (3d Cir. 1959). The direct testimony of the plaintiffs showed that the injection of antibiotic in the wife plaintiff's right buttock was in or near to the sciatic nerve. It was injected into the center of the buttock instead of in the outer aspect of the upper right quadrant, where uniformly it was agreed by the medical and nursing witnesses, is the designated place for the injection in order to avoid the sciatic nerve. Immediately after one of the injections, the wife plaintiff experienced severe pain (T., pp. 36–37); there was an immediate and continuing cessation of function of the sciatic nerve; she complained promptly to attendants, to her husband, to Dr. Thorpe and to his assistants (T., pp. 37 et seq., pp. 249 et seq.). Her testimony of pain, numbness and complaints are supported by hospital records. Because of her complaints, Dr. Ahmed, one of Dr. Thorpe's assistants, the next day ordered an Incident Report from the nurse who administered the injections (Exhibit B), and three other doctors were called in to consult about the nerve injury. Included among these consultants were a neuro-surgeon, Dr. Laibe A. Kessler, and a specialist in rehabilitation medicine, Dr. Samuel Sherman, both of whom prescribed for and treated her injured nerve. She told these doctors about the injection and the resulting pain and numbness in her right leg (T., pp. 45–47). The testimony, direct, circumstantial and expert was sufficient to show that an antibiotic injection was not administered in accord with the recognized standard of care but was administered negligently in the center of the right buttock, and was the proximate cause of the injury.

### Motion for New Trial

The defendant hospital assigns three reasons in support of its motion for a new trial:

"1. The Court erred in permitting plaintiffs' expert, Dr. Kessler, to give an opinion based upon unsubstantiated hearsay statements.

"2. The verdict in favor of the husband plaintiff was grossly excessive.

"3. The verdicts in favor of the plaintiffs were contrary to the weight of the evidence."

Reasons two and three are without merit. Since the hospital did not brief either, they need not be discussed.

The first reason is concerned with the opinion evidence of Dr. Laibe A. Kessler contained in his deposition taken by Dr. Stephen Finestone, one of the defendants. Parts of the Kessler deposition were introduced into evidence by the plaintiffs pursuant to Rule 26(d) (3) and by agreement of counsel.[1]

As stated, Dr. Kessler was called into consultation because of the injury to the wife plaintiff's sciatic nerve near the site of one of the antibiotic injections. This injury became apparent to the hospital attendants and to Dr. Thorpe and his assistants, Dr. Ahmed and Dr. Cezar, shortly after she was returned to her hospital room. Dr. Ahmed ordered the Incident Report within 22 hours (T., pp. 754–755, 813–814). Dr. Kessler saw her three days later. After taking a history and hearing her account of the injection and the extreme pain (T., p. 45), and examining her, and talking to nurses who were in the recovery room (T., pp. 783, 889),[2] he was of the opinion that she had a sciatic neuritis or neuropathy due to trauma. He was of the opinion that the trauma was sustained in the defendant hospital. He was of the opinion based upon "reasonable certainty" that the trauma was sustained "in the immediate postoperative period". The doctor stated: "This is not an uncommon problem. I see perhaps two patients a year with this kind of an injury. It is more common in children because they have smaller rear-ends." The wife plaintiff was thin (T., p. 750).

The hospital objected to the doctor's opinion as to the cause of the wife plaintiff's sciatic nerve injury because it was based on hearsay (T., pp. 869, 882). The objections were overruled (T., pp. 871, 888). In our opinion the rulings were proper for the five reasons hereinafter stated.

The only testimony of Dr. Kessler as to the cause of the wife plaintiff's injured nerve was as follows (T., pp. 871–872):

"Q. Do you feel that from the information which you have, and have obtained, and from your examination of Mrs. Dudding, that you could give an opinion as to what has caused the problems which she has, if you can determine the problems she has?

A. Yes, I think we can say with reasonable certainty she had an injury to the sciatic nerve, and that the injury apparently was caused by trauma which she sustained in the immediate postoperative period. This is not an uncommon problem. I see perhaps two patients a year with this kind of an injury. It is more common in children because they have smaller rear-ends.

Q. Do you have any opinion as to, again more specifically, the type

---

1. At trial the plaintiffs desired to call Dr. Kessler as their witness but he was in Florida. It was agreed by all counsel that plaintiffs could call Dr. Kessler out of order if he returned from Florida in time to testify and was available to testify for the plaintiffs (T., pp. 497–498). He did return and was in Pittsburgh during the last day on which testimony was taken, but he was not available to testify because he was operating (T., p. 855).

2. At trial the head nurse admitted discussing the injections with Dr. Kessler (T.,

pp. 780–781). On cross-examination she was asked: "And did you not tell Dr. Kessler that one of these injections caused an unusual reaction on the right side, with Mrs. Dudding? A. No, sir, I did not." Thereupon, counsel for the hospital stated to the court: " * * * [I]n view of the witness's answer, I expect counsel to come up with proof that such a statement was made, in view of the leading form of the question." (T., p. 782.) It seems that the subsequent proof of such a statement would be unobjectionable (T., p. 889).

of trauma that you feel was the cause of this?

A. I have no records to this effect, but it was obvious to me at the time, and just hearsay, of information that was available to me, that she had had numerous buttocks' injections in the immediate postoperative period and, by deduction, buttocks' injection is the cause of trauma to the sciatic nerve in my experience.

Q. You mean the cause or a cause?

A. It is the cause, because we know of no other trauma that occurs, or no other indication she had fallen on her buttocks, so the only other source of trauma at that time was repeated numerous injections that she had received."

At T., p. 889, he testified:

" * * * I was aware that the diagnosis had to be an injection, in my judgment * * *."

■ 1. When counsel for the hospital undertook to cross-examine Dr. Kessler, he brought out that although the doctor "was aware that the diagnosis had to be an injection, in my judgment", he pursued the matter in the "recovery suite". There he talked to " * * * one or more nurses. I would not discuss it with anybody else." [3] (T., pp. 889–890.) His inquiry revealed that "injections were given in both buttocks, as is routine for this kind of a patient * * * there was a sort of jerk or reaction of some sort when one injection was given as compared to the other side, to which the patient showed no reaction." (T., p. 889.)

In Cox v. United States, 103 F.2d 133, 136 (7th Cir. 1939), in a deposition which was read to the jury, upon objection by the defendant, the Court excluded certain hearsay evidence which was elicited by the defendant on cross-examination. The Appellate Court in reversing quoted from the Supreme Court of Illinois as follows:

" 'That part of his evidence to which objection is taken, was brought out on cross-examination of the witness by counsel now insisting it is improper. Of that there can be no just ground for complaint. Counsel will not be allowed to cross-examine a witness, and if the testimony elicited is not satisfactory, have it excluded. That would enable a party to experiment with a witness, which is not allowable.' "

In all the circumstances of this case, we are in accord with this view.[4]

■ 2. No objection or motion to strike Dr. Kessler's opinion or the alleged hearsay statements was made at the deposition by the hospital or by any other party. If an objection had been made, the alleged error might have been cured by a hypothetical question. Cordle v. Allied Chemical Corporation, 309 F.2d 821 (6th Cir. 1962); Batelli v. Kagan and Gaines Co., 236 F.2d 167 (9th Cir. 1956); Thompson v. Thompson, 82 U.S. App.D.C. 325, 164 F.2d 705 (1947); Rule 32(c) (1), Fed.R.Civ.P.

■ 3. The only error asserted in the motion for a new trial (and the court can consider no other) [5] was that Dr. Kessler's opinion was based upon unsubstantiated hearsay statements. We do not agree. The statement that a postoperative antibiotic injection was administered into the right buttock of the wife plaintiff in the recovery room was substantiated at trial by ample undisputed evidence. Also, there was cogent testimony given by the wife plaintiff herself which gave rise to a reasonable and

---

3. Dr. Kessler had called the head nurse who administered the offending injection and discussed it with her. See testimony of the head nurse at T., p. 781. See f.n. 2, supra.

4. See f.n. 2, supra.

5. Russell v. Monongahela Railway Company, 262 F.2d 349 (3d Cir. 1958); Demeretz v. Daniels Motor Freight, Inc., 307 F.2d 469 (3d Cir. 1962).

strong inference which substantiated the statement that a jerk or reaction of some sort occurred in the recovery room when one injection was given as compared to the other side, to which the patient showed no reaction. She testified that when the third injection was given in her right hip " * * * the pain was unbelievable. * * * The minute she gave me the shot, the pain was in the immediate area * * *. * * * This was a pain that I had never experienced before. This was very different. I knew that something was wrong." (T., pp. 36–37.)

4. Moreover, we think it was established by the testimony of the hospital's administrator that a nurse in the recovery room had authority to make that type of statement to Dr. Kessler, a member of the hospital's staff, who at that time was treating the wife plaintiff for the sciatic nerve injury (T., pp. 492–493), and inquiring as to what happened (T., p. 889).

"In an action between the principal and a third person, statements of an agent to a third person are admissible in evidence against the principal to prove the truth of facts asserted in them as though made by the principal, if the agent was authorized to make the statement or was authorized to make, on the principal's behalf, any statements concerning the subject matter." Restatement, Second, Agency, § 286.

It is not essential that the nurse's name be ascertained before her statement is admitted against her employer. However, the employer should be given information reasonably definite for identification both in order that her authority may be tested and that her authorized statement, if introduced, may be rebutted. Reasonably definite information was supplied by Dr. Kessler who testified that he talked to one or more nurses in the recovery room and that he would not have discussed it with anyone else (T., p. 889). *Cf.* Northern Oil Company v. Socony Mobil Oil Company, 347 F.2d 81 (2d Cir. 1965); Midland Credit Company v. White, 178 Pa.Super. 607, 115 A.2d 788; Wahl v. State Workmen's Ins. Fund, 139 Pa.Super. 53, 11 A.2d 496. The authorized statement of a nurse who observed the injections in the recovery room would be admissible as an admission against the hospital and an exception to the hearsay rule.

5. Finally, we are of the opinion that even if it were error to admit the statement of the unidentified nurse elicited by the hospital on cross-examination, we think it was harmless. Dr. Kessler's opinion was based upon the history and information supplied by his patient, and upon his physical examination and testing of her right leg. His opinion was one of three medical opinions that a postoperative antibiotic injection was the cause of the injury to her sciatic nerve. Where hearsay evidence is admitted, the burden is upon the complainant to show that the admission constituted both error and prejudice. Garner v. United States, 277 F.2d 242 (8th Cir. 1960). This, we think, the hospital has not done.

An appropriate order will be entered.