Gordon BAUGHMAN, Appellant in No. 75–1536,

v.

COOPER–JARRETT, INC., et al.

Appeal of WILSON FREIGHT FORWARDING COMPANY a/k/a Wilson Freight Company, in No. 75–1537.

Nos. 75–1536, 75–1537.

United States Court of Appeals, Third Circuit.

Argued Dec. 10, 1975.

Decided Feb. 18, 1976.

Rosenn, Circuit Judge, concurred in part and dissented in part and filed an opinion.

John W. McIlvaine, Monongahela, Pa., for Gordon Baughman.

Richard L. Rosenzweig, Rosenzweig & Rosenzweig, Pittsburgh, Pa., Arthur E. Siegel, Cincinnati, Ohio, for Wilson Freight Co.

Before SEITZ, Chief Judge, and GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

In these cross appeals the plaintiff Gordon Baughman, appellant in No. 75–1536, contends that the district court erred in reducing a judgment in his favor from $75,000 to $25,200, and the defendant, Wilson Freight Forwarding Company (Wilson), cross-appellant in No. 75–1537, contends that the district court erred in denying its motion for judgment n. o. v.[1] We remand for a modification of the judgment.

## I. PROCEEDINGS BELOW

Baughman, an over-the-road truck driver, brought suit against his former employer, Cooper-Jarrett, Inc., and four other trucking companies including Wilson, charging that the defendants conspired to blacklist him from obtaining work in the trucking industry. Relief was predicated on the Sherman Act § 1 and § 2, 15 U.S.C. §§ 1, 2, and on a pendent Pennsylvania law claim for tor-

tious interference with prospective contractual relationships. Trial of that action in January, 1974 resulted in a directed verdict in favor of all defendants on the Sherman Act § 2 claim, in favor of all defendants except Cooper-Jarrett on the pendent state law claim, and in favor of one defendant on all claims. The jury rendered a verdict against three of the remaining defendants on the Sherman Act § 1 claim and against Cooper-Jarrett on the pendent state law claim. It absolved one defendant of all liability. On the defendants' motion for judgment n. o. v. and for a new trial, the court granted a new trial.

The second trial commenced on October 9, 1974, against the three remaining defendants. After the jury was sworn but prior to plaintiff's opening statement two of the defendants, Cooper-Jarrett and Matlack, Inc., entered into a settlement agreement whereby they paid Baughman a total of $60,000 in compromise of the Sherman Act § 1 claim in return for a joint tortfeasor release. Baughman reserved all his rights against Wilson. The case went to trial against Wilson and the jury returned a verdict of $25,000 in Baughman's favor. Trebled pursuant to 15 U.S.C. § 15, the resulting judgment was $75,000.

Wilson moved for judgment n. o. v., and alternatively to reduce the judgment by crediting against it the $60,000 obtained in settlement from Cooper-Jarrett and Matlack. The court denied the motion for judgment n. o. v., but reduced the judgment to $25,200.[2]

## II. WILSON'S LIABILITY CONTENTIONS

Wilson makes two arguments in support of its contention that it is entitled to a judgment n. o. v. The first is that the court in a pre-trial ruling erred in failing to grant its motion for summa-

1. The district court's opinion is reported at 391 F.Supp. 671 (W.D.Pa.1975).
2. The order appealed from left undetermined the amount of an award of attorney's fees recoverable pursuant to 15 U.S.C. § 15. That statute provides for the recovery by the prevailing litigant of "threefold the damages by him sustained, and the *cost of suit, including a*

*reasonable attorney's fee.*" (emphasis supplied). The award of such a fee as a part of the cost of suit is mandatory. 6 J. Moore, Federal Practice ¶ 54.71[2], at 1380 (2d ed. 1975). The reservation of the determination of costs does not affect the finality of the judgment for purposes of 28 U.S.C. § 1291.

ry judgment because Baughman at that time produced no evidence suggesting a factual dispute existed over whether Wilson was a member of the conspiracy against him. This argument need not detain us. Wilson refers us to no authority for the proposition that an appellate court will after a jury trial and a verdict review an interlocutory order refusing to grant a motion for summary judgment. No reason in logic or policy suggests that we should do so. Indeed, the seventh amendment might impose an obstacle where, as here, there is sufficient evidence in the record for the case to have gone to the jury.

The second argument is that there is no properly admitted evidence showing that Wilson was a participant in the conspiracy to blacklist Baughman and no properly admitted evidence of the conspiracy.

The only evidence tending to connect Wilson to the blacklisting conspiracy was the testimony of Baughman respecting a Wilson employee named Umberger. If his testimony was either improperly admitted or insufficient, then the remaining evidence, consisting for the most part of admissions of alleged co-conspirators, was not admissible against Wilson. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941).

Umberger was the Relay Supervisor or Local Manager of Wilson's Stanton freight terminal. Although employment applications were forwarded to Wilson's headquarters in Cincinnati before a hiring decision was made, Umberger screened out the majority of applications and communicated to applicants the hiring decision and the reasons therefor. Baughman testified over objection (42a):

Q. Go ahead. Tell the jury what Mr. Umberger, the terminal manager, told you and Mr. Fait about your application.

A. He said at that time that he was sorry he could not use me. He said the word was out from Cooper Jarrett that I was blacklisted, that he could not hire me.

Baughman had previously applied for a job with Wilson, and was asked to check back in ten days. The quoted testimony referred to a conversation which took place when he did so. If Umberger could make admissions on behalf of Wilson, the conversation is evidence that Wilson was acting in concert with the other alleged conspirators in enforcing a blacklist.

 Wilson urges that Umberger had no authority to make such an admission on its behalf. Whether an employee has the authority of an agent to make admissions on behalf of his employer is determined by the law of agency. *See* Fed.R.Evid. 801(d)(2)(C) and Notes of Advisory Committee; IV J. Wigmore, Evidence § 1078, at 162 (Chadbourn ed. 1972); *see generally Joseph T. Ryerson & Son, Inc. v. H. A. Crane & Brother, Inc.,* 417 F.2d 1263 (3d Cir. 1969). The district court found as a fact that Umberger had express or at least implied authority to inform Baughman of the reasons why Wilson had rejected his application for employment. Thus giving as a reason the existence of the blacklist is a statement concerning the subject matter about which Umberger was authorized to speak. *See* Restatement (Second) of Agency § 286 (1958); *Dudding v. Thorpe,* 47 F.R.D. 565, 571 (W.D. Pa.1969). We conclude that Baughman's testimony about Umberger's statement was properly admitted, and thus that there was evidence of Wilson's participation in the blacklisting conspiracy sufficient to permit use against it of the admissions of co-conspirators made in furtherance of the conspiracy.

 Wilson urges that even if there was evidence connecting it with the conspiracy the court erred in admitting over objection evidence of a statement by Clarence Frankel, a Cooper-Jarrett Vice President (32a):

"He [Baughman] will not drive any of Cooper-Jarrett's trucks ever again nor will he drive for any other freight company."

The district court ruled that the statement fell within the state of mind exception to the hearsay rule. *See* Fed.R. Evid. 803(3); *Mutual Life Insurance Co. v. Hillmon,* 145 U.S. 285, 12 S.Ct. 909, 36

L.Ed. 706 (1892). Wilson concedes that the statement was admissible to show Frankel's then state of mind, but urges that it was error to permit use of the statement as evidence of its participation in the conspiracy. Evidence that Frankel intended never to let Baughman drive for Cooper-Jarrett is only slightly probative, if at all, of the conspiracy question. Evidence that he intended to preclude Baughman from driving for others, however, while probative of Frankel's state of mind, is hardly reliable evidence of the conduct of third parties whose participation would be required to make Frankel's expressed state of mind anything more than a hope. *See* Maguire, *The Hillmon Case, Thirty-Three Years After,* 38 Harv.L.Rev. 709, 717 (1925).

But the record contains other evidence of the existence of a conspiracy, and of the participation in it of Matlack and Wilson. That evidence included the statements made by Umberger, referred to above, and statements made by Matlack's terminal manager. Certainly Frankel's statement was admissible to show that Cooper-Jarrett intended to enlist the cooperation of others. The preferred course would have been to give a limiting instruction that Frankel's statement was not admissible to show the participation of Wilson or Matlack in the conspiracy. *Cf. United States v. Brown,* 160 U.S.App.D.C. 190, 490 F.2d 758, 762 n. 7 (1973). But since the evidence was admissible and against Wilson as proof of conspiracy merely cumulative, failure to give a limiting instruction was harmless error.[3]

We conclude that there is no basis for setting aside the jury's liability determination against Wilson.

## III. THE REDUCTION OF THE JUDGMENT

Baughman does not dispute the rule that a plaintiff who has recovered an item of damage from one co-conspirator may not again recover the same item of damage from another conspirator. *Zenith Radio Corp. v. Hazeltine Research Inc.,* 401 U.S. 321, 348, 91 S.Ct. 795, 28 L.Ed.2d 77 (1971). Nor does either Baughman or Wilson dispute that the set-off is made against the trebled damage award, not merely against the compensatory amount determined by the jury. *Flintkote Co. v. Lysfjord,* 246 F.2d 368, 397–98 (9th Cir.), *cert. denied,* 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957). Both sides, however, contend that the district court erred in computing the amount of the set-off. Wilson urges that $60,000 should have been deducted from $75,000 and judgment entered for $15,000 at most. Baughman argues that the set-off of $49,800 which the district court allowed was too high. This disagreement arises out of a trial ruling to which no objection was made.

At the second trial the court at Wilson's request, and without objection from Baughman, instructed the jury to award damages only for the period after which Wilson joined the conspiracy.[4] There was evidence that a conspiracy existed as early as February, 1971, but there was no proof of participation by Wilson prior to August 24, 1971. The district court concluded that the jury's determination of damages in the amount of $25,000 covered damages for conspiratorial conduct after August 24, 1971, whereas the settlement by Cooper-Jarrett and Matlack covered damages for

**3.** The ruling admitting Frankel's statement without a limiting instruction would at most be a ground for a new trial, not for a judgment notwithstanding the verdict. No motion for a new trial was made in the district court. We may, however, consider the issue. Rule 50(d), Fed.R.Civ.P.

**4.** The district court in considering the post trial motions assumed this instruction was error. 391 F.Supp. at 679. Baughman concedes that since he made no objection he cannot rely on the claimed error on appeal. Rule 51, Fed.R.

Civ.P. In criminal cases this circuit has held that a co-conspirator is liable for all conspiratorial acts, even those committed prior to his joining the conspiracy. *See United States v. Lester,* 282 F.2d 750 (3d Cir. 1960), *cert. denied,* 364 U.S. 937, 81 S.Ct. 385, 5 L.Ed.2d 368 (1961); *Lefco v. United States,* 74 F.2d 66 (3d Cir. 1934). We have no occasion to consider in this case whether the same rule applies in civil cases. *But see Essaness Theatres Corp. v. Balaban & Katz Corp.,* 1955 Trade Cas. ¶ 68,152 (N.D.Ill.1955).

the period from February, 1971 forward. The court reasoned that the *Zenith* rule would not require a deduction for that part of the settlement attributable to damages which occurred prior to August 24, 1971. This required the court to attempt to reconstruct the total amount of damages suffered as a result of the conspiracy. There was evidence in the record to establish Baughman's loss of earnings for the entire life of the conspiracy, dating back to February, 1971. The court calculated a net earnings loss for the period from February, 1971 to August 24, 1971 of $5,200 and added that amount to the jury award of $25,000, to arrive at total damage of $30,200. Since about 83 per cent of the total damages was incurred after August 24, 1971, the court concluded that only 83 per cent of the $60,000 settlement, or $49,800, should be attributed to that damage period. It therefore deducted $49,800 from the $75,000 judgment, which yielded a net of $25,200.

■ The amount of credit to be applied against the judgment to reflect the proceeds of the settlement was a matter for the trial court to decide in the first instance. The court's findings of fact that $5,200 in damages was incurred prior to August 24, 1971 is not clearly erroneous. The jury verdict establishes the damages for the later period. Thus we must accept that the total of damages is $30,200. The only open question is what calculations should be made in arriving at the proper *Zenith* credit against the $75,000 judgment.

The theory on which the court in *Flintkote Co. v. Lysfjord, supra,* held that the credit for the payment from the settling conspirators should be applied to the trebled damage award rather than to the compensatory award prior to trebling was that all co-conspirators were liable for all elements of damage including the punitive damage resulting from trebling, and that the settlement payments must therefore be credited against

all elements of damage included in the judgment. The district court purported to apply the *Flintkote* rule, but erred in one particular. It is true that the settling conspirators paid in compromise of their entire liability, including liability for the period from February, 1971 to August 24, 1971. But they were exposed to liability not only for single damages for that period, but for treble damages. Their payment discharged that total liability, not merely their potential liability for $5,200 in compensatory damages. Compliance with the *Flintkote* theory requires the following calculation:

| | |
|---|---|
| Pre-August 24, 1971 damages, trebled | $15,600 |
| Post-August 24, 1971 damages, trebled | $75,000 |
| Total damages | $90,600 |
| Credit | $60,000 |
| Net uncompensated damages, trebled | $30,600 |

By not taking into account the settling conspirators' potential liability for treble damages for the pre-August 24, 1971 wage losses, the district court allowed too great a credit against the $75,000 judgment. Judgment should have been entered for $30,600, representing the difference between the trebled verdict and the pro rata share of the settlement fund.

We have some difficulty with either the district court's approach or our own, because while we can say with some confidence that the district court's calculation of $5,200 is not clearly erroneous, it is not at all certain that the court's calculation and the jury's verdict were arrived at by comparable methods.[5] Nevertheless, the *Flintkote* rule that the settling defendants settled their treble damage liability seems to us sound. Because the court in its charge to the jury divided the damage periods, some means of apportioning the settlement between the two periods must, in the absence of any agreement, be devised. That which we have set out seems as fair as the circumstances in this record permit.

5. It is conceivable, for example, that although the court instructed the jury to award damages only for injuries sustained from August 24, 1971 forward, the jury in fact included part of all damages the court subsequently attribut-

ed to pre-August 24, 1971 activity. Any such suggestion is purely speculative, however, so it must be assumed that the jury acted consistent with its instructions.

Wilson argues that by apportioning any part of the settlement to pre-August 24, 1971 liability the court is permitting Baughman to go behind the jury verdict fixing his total damages at $75,000, and in effect to increase the verdict to over $90,000. It urges that Baughman should not, by having the court manipulate the amount of the credit, overcome his failure to object to the court's charge that Wilson was liable only for damages incurred after it joined the conspiracy. But Wilson was at least equally responsible for that erroneous charge. Indeed, it was given at its request. If the charge is a correct statement of the law (a matter on which we do not rule) then the court certainly was required to attribute some part of the settlement to the earlier period. If it is an incorrect statement of the law Wilson is in no better position than Baughman to complain about the court's effort to enter a judgment which avoids duplicate recoveries, but permits recovery of all that the jury found to be due.

## IV. CONCLUSION

The order denying Wilson's motion for judgment notwithstanding the verdict will be affirmed. The order reducing the judgment from $75,000 to $25,200 will be vacated and the cause remanded to the district court with directions to enter a judgment in the amount of $30,-600.

ROSENN, Circuit Judge (concurring and dissenting).

I agree with the views expressed in Parts I and II of the majority's opinion. I am constrained, however, to dissent from its views as to the reduction of judgment as set forth in Part III. Since I believe the district court correctly determined the amount to be set off against the treble damage award, I would affirm the judgment of the district court in all respects.

The district court directed the jury to compute damages from August 24, 1971, the date that the defendant Wilson joined the conspiracy, rather than from its inception. The district court appropriately trebled the compensatory verdict of the jury as returned, $25,000, and reached the sum of $75,000.

The question then before the district court was the credit to be allowed under *Flintkote v. Lysfjord,* 246 F.2d 368 (9th Cir.), *cert. denied,* 355 U.S. 835, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957), for the settlement entered into between the plaintiff and Cooper-Jarrett and Matlack, Inc. Since the $60,000 settlement covered the entire period of the conspiracy, the district court properly determined that only 83 percent of this sum, or $49,800, should be attributed to the post-August 24, 1971, damage period presumably considered by the jury.[1] In view of the district court's instructions to the jury, this allocation was proper and was not inconsistent with the *Flintkote* principle. The net realized and the sum for which it entered judgment was $25,200. I believe the principle applied and its mathematical computation was correct.

Baughman contends that Wilson's liability as a co-conspirator should extend to the beginning of the conspiracy and should not have been confined by the district court's charge to the period after August 24, 1971. As he and the majority recognize, however, Baughman's failure to object to the instruction precludes him from raising the alleged error on appeal under Fed.R.Civ.P. 51. *Hoffman v. Sterling Drug, Inc.,* 485 F.2d 132, 138–39 (3d Cir. 1973). Hence, the majority states that it does not reach the issue of whether Wilson's liability should properly include the period prior to August 24, 1971. "The only open question," according to the majority, "is what calculations should be made in arriving at the proper

---

1. The district court reached its 83 percent figure by using pre- and post-August 24, 1971, figures untrebled. The majority claims this calculation fails to reflect defendants' liability for treble damages over the entire period. The identical result is reached, however, if all the figures are trebled. The trebled post-August 24, 1971, damages are $75,000 and are 83 percent of the total trebled damages of $90,600. It is that percentage which should be used, and was used by the district court, to apportion the settlement amount over the two periods under consideration.

**536**

*Zenith* credit against the $75,000 judgment."

Having thus disavowed any intention of considering Wilson's liability beyond the period referred to in the district court's charge, the majority then proceeds to remold the jury verdict to include, in effect, pre-August 24, 1971, damages. It deducts the entire settlement amount of $60,000 from the total potential trebled damages of $90,600 and awards Baughman the difference, thus allowing him all of his damages prior to August 24, 1971, despite the unchallenged instruction limiting damages to the period subsequent to that date.

Such a remolding of the verdict carries implications for the seventh amendment right to trial by jury. The United States Supreme Court has held that the proper remedy for an inadequate verdict is the grant of a new trial rather than the assessment of additional damages. Although a federal court may substitute a remission of the excess for a new trial where a verdict is too large, it cannot enlarge damages in the same way.

> [T]he remittitur has the effect of merely lopping off an· excrescence. But where the verdict is too small, an increase by the court is a bald addition of something which in no sense can be said to be included in the verdict.

*Dimick v. Schiedt,* 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935). The Court concluded that federal courts have no power to so invade the right to a jury determination of the extent of a defendant's liability.

In the instant case, the majority has ignored established principles by disturbing a judgment entered on the verdict of a jury supported by sufficient evidence, in spite of the absence of objection to the charge. *Hoffman, supra; Moomey v. Massey Ferguson, Inc.,* 429 F.2d 1184, 1187 (10th Cir. 1970); *Manning v. New York Telephone Co.,* 388 F.2d 910, 912 (2d Cir. 1968); *Green v. American Tobacco Co.,* 325 F.2d 673, 676 (5th Cir. 1963), *cert. denied,* 377 U.S. 943, 84 S.Ct. 1349, 12 L.Ed.2d 306 (1964). ·There is here no fundamental error requiring an exception to the general rule.

I would affirm the judgment of the district court.