**Lori A. REPPERT, Appellant**

v.

**Mark MARINO; Joseph Blackburn; R. Dane Merryman; City of Allentown; Michael Faulkner; Donald French; April Kummerer; William Lake; Thomas Sedor.**

No. 06–4239.

United States Court of Appeals, Third Circuit.

Argued Oct. 23, 2007.

Opinion Filed Dec. 27, 2007.

---

Richard J. Orloski (Argued), Orloski, Hinga, Pandaleon & Orloski, Allentown, PA, for Appellant.

Donald E. Wieand, Jr. (Argued), Stevens & Lee, Lehigh Valley, PA, for Appellees.

Before FISHER, STAPLETON, and COWEN, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

Lori A. Reppert brought this action pursuant to 42 U.S.C. § 1983 alleging that officers of the Allentown Police Department violated her rights when they stopped her vehicle and searched her vehicle and her person for drugs. Following trial, the jury returned a verdict in favor of the defendants. Ms. Reppert appeals. Because we find that plaintiff was unfairly prejudiced by certain District Court evidentiary rulings, we will reverse and remand for a new trial.

## I

On the night of February 8, 2005, two officers of the Allentown Police Department, Thomas Sedor and Michael Faulkner, working in plain clothes and in an unmarked car, observed Lori Reppert park her car near 14th and Union Streets in Allentown. At roughly 11:00 p.m., after the officers had been observing Reppert for some time, Reppert exited her car and used a nearby pay phone, and then returned to her car. Approximately ten minutes later, two individuals, a female later identified as Ellie Nieves and an unidentified male, approached and entered plaintiff's car.

While the two officers observed Reppert, they ran a registration check of her car and contacted a third officer, Sergeant Donald French, who was also working in plain clothes, for assistance. Allentown police had made multiple drug arrests in the neighborhood in recent weeks and the officers suspected drug activity.

Plaintiff, with Nieves and the unidentified male in her car, then drove from the 14th and Union street area, and officers Sedor and Faulkner followed. Sergeant French also followed. Plaintiff drove to the East side of Allentown and stopped at an apartment house, where the male departed. Plaintiff, with just herself and Nieves in the vehicle, then drove toward the center of Allentown. At that point, officers Sedor and Faulkner radioed for a uniformed police officer to stop plaintiff's car so that the officers could investigate further. Officer William Lake responded and stopped plaintiff's vehicle near the center of Allentown. Neither officer Sedor nor officer Faulkner saw an exchange of money or drugs before they asked for plaintiff's vehicle to be stopped.

After plaintiff stopped her car, the officers asked her if she had any drugs or had used drugs, and plaintiff answered in the negative to both questions. The officers also asked plaintiff the name of the male passenger, and plaintiff replied that she did not know. Soon thereafter, another police officer, Mark Marino, arrived at the scene.

The officers proceeded to conduct searches for drugs: first a search of the inside of Reppert's pockets, then a search of plaintiff's car, and ultimately strip searches of both women. Defendants contend that plaintiff consented to each of these searches in turn; plaintiff denies having given her consent to search either her person or her vehicle.

Officer Faulkner performed an initial pat-down search of plaintiff, including a search of her pockets. This search revealed no drugs or contraband. Officers Faulkner and Sedor, and Sergeant French, then performed a thorough search of plaintiff's car, including of the front and back seats and the trunk of the car. Again, that search revealed no drugs or contraband.

Officer Marino had contacted a female officer, April Kummerer, at police headquarters and informed her that she was needed to perform a strip search of Reppert and Nieves. Officer Kummerer did not obtain the women's consent to the strip searches after she arrived but testified that she had assumed, based on her experience, that the other officers had obtained consent. Officer Kummerer first conducted a strip search of Nieves in the back of the paddy wagon, and found no drugs or contraband. Officer Kummerer then conducted a strip search of plaintiff consisting of a visual inspection of plaintiff's body cavities. Officer Kummerer did not physically touch Reppert in the course of the search. Again, the search revealed no drugs.

Reppert then got dressed, returned to her vehicle, and was told that she was free to leave. The stop, investigation and searches lasted roughly thirty minutes.

No charges were filed against Reppert or Nieves as a result of the incident.

## II

Reppert filed a complaint[1] under 42 U.S.C. § 1983 against each of the individual officers involved in the incident and against the City of Allentown seeking damages for various alleged violations of her federal rights.[2]

All defendants moved for summary judgment on all counts. The District Court granted the motion in part and denied it in part. The District Court granted summary judgment to defendant Lake on count one (illegal arrest) based on qualified immunity, and granted summary judgment on counts five (civil conspiracy), six (policy of racial profiling) and seven (policy of warrantless strip searches) to all defendants because the Court found that plaintiff failed to establish any genuine issue of material fact regarding those claims. The Court allowed plaintiff to proceed with count one (illegal stop and "arrest") against all defendants except Lake, as well as with counts two (illegal vehicle search), three (illegal pat-down) and four (illegal strip search) against all defendants.

Following the close of evidence at trial, plaintiff and defendant each submitted an oral motion for a directed verdict pursuant to Fed.R.Civ.P. 50(a) ("Rule 50(a)"); each requested judgment as a matter of law on the issue of the legality of defendants'

initial stop of plaintiff. The District Court denied both motions.

The jury returned a verdict in defendants' favor on all counts, and the District Court entered a molded jury verdict.

Plaintiff filed no Rule 50(b) motion to renew her motion for judgment as a matter of law. The District Court entered judgment in defendants' favor and this appeal followed.

## III

The District Court had federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291 over the District Court's September 21, 2006, order entering judgment in favor of all defendants.

## IV

In this appeal, plaintiff challenges the District Court's grant of summary judgment to defendant City of Allentown on count seven (policy or custom of illegal warrantless strip searches); the District Court's denial of plaintiff's motion for judgment as a matter of law regarding the legality of the initial stop; the District Court's rulings allowing Tim Devanney to testify at trial; and the District Court's jury instructions regarding the issue of consent to the strip search.

1. The complaint described herein is the Second Amended Complaint.

2. The complaint contains seven counts: count one alleges that defendants French, Sedor, Faulkner and Lake illegally stopped and "arrested" plaintiff; count two asserts that defendants French, Faulkner and Sedor conducted an illegal search of plaintiff's vehicle; count three asserts that plaintiff was subjected to an illegal pat-down search by defendants French, Faulkner and Sedor; count

four avers an unreasonable search of plaintiff's body cavities by defendants Kummerer, Marino, French, Faulkner and Sedor; count five alleges that all defendants participated in an illegal civil conspiracy against plaintiff; count six asserts that the City of Allentown maintained an illegal policy of racial profiling; count seven alleges that defendants French and the City of Allentown maintained an unlawful policy of warrantless strip searches.

## A

Plaintiff's complaint alleges, in count seven, that Sergeant French initiated, and the City of Allentown approved or acquiesced in, a policy of illegal, on-site, warrantless strip searches. The District Court granted defendants' motion for summary judgment on this claim because it found that plaintiff had identified no evidence creating a genuine issue of material fact regarding the existence of a policy or custom of illegal strip searches. This Court's review of the District Court's order granting summary judgment to defendants is plenary. *Curley v. Klem,* 298 F.3d 271, 276–77 (3d Cir.2002).

As factual support for her municipal liability claim, plaintiff points only to a quote from defendants' own motion for summary judgment in which defendants state that certain individual officers had testified in their depositions that "there was a long-standing custom in the Allentown Police Department of ... consensual, on-site strip searches for suspected drug activity." Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment at 33. Plaintiff also argues that defendants had conceded that the issue of consent is a disputed issue of fact.

Plaintiff fails to identify evidence creating a genuine issue of material fact regarding a policy or custom of illegal strip searches. The portion of defendants' brief quoted by plaintiff does not itself identify any unconstitutional conduct. Plaintiff's contention that defendants admit that consent is a disputed issue of fact does not create a genuine issue of material fact regarding municipal liability. Consent is a disputed issue of fact in this case; however, plaintiff points to no evidence that defendants conducted any prior non-consensual strip searches. Plaintiff also fails to identify evidence suggesting that supervisory or policymaking officials had notice of, or were deliberately indifferent to, any

illegal strip searches (of plaintiff or otherwise). Plaintiff, in sum, identifies absolutely no evidence of a policy or custom that caused a violation of her constitutional rights. Therefore, the District Court did not err when it granted defendants' motion for summary judgment on Count Seven of plaintiff's complaint.

## B

On September 7, at the close of evidence at trial, plaintiff submitted an oral motion pursuant to Fed.R.Civ.P. 50(a) for judgment as a matter of law establishing that the police officers' initial stop of plaintiff's vehicle was illegal. Plaintiff argued that the officers had no reasonable, particularized suspicion for the stop. The District Court denied plaintiff's motion on September 11, 2006, and the jury returned a verdict in defendants' favor the following day. Plaintiff argues that the District Court erred when it denied plaintiff's motion.

If a party fails to renew a Rule 50(a) motion for judgment as a matter of law via a post-verdict motion under Rule 50(b), this Court is without power to direct the District Court to enter judgment contrary to the one it had permitted to stand. *Unitherm Food Systems v. Swift–Eckrich,* 546 U.S. 394, 400–01, 126 S.Ct. 980, 163 L.Ed.2d 974 (2006). Plaintiff did not renew her motion but instead filed notice of appeal immediately after the jury returned its verdict.

## C

Plaintiff asserts that the District Court erred when it declined to sustain her objections to the testimony of Timothy Devanney. Devanney testified that, after the incident and at the request of the police, he had asked plaintiff if she had consented to the strip search and she said that she had consented because she

planned to sue the police. Devanney also testified that he knew plaintiff was a frequent drug user and Nieves was a drug dealer because, over a period of several years, he regularly did drugs, particularly "crack" cocaine, with plaintiff and her boyfriend, and he knew that they frequently purchased drugs from Nieves. Devanney further testified that plaintiff often gave Nieves rides around town in exchange for small amounts of drugs, that the purpose of plaintiff's visit on the night in question was to procure drugs, and that plaintiff had told him that she was surprised the police did not find drugs on Nieves on the night in question. Finally, Devanney testified that plaintiff told him after the incident that the unidentified male in plaintiff's car had told plaintiff on the night in question "be careful, it's hot around here" (referring to the presence of police). Devanney communicated these allegations to defendants for the first time several months after the incident itself and was offered immunity by the District Attorney of Lehigh County for his testimony.

Plaintiff filed a motion in limine to suppress Devanney's testimony, as presented in his deposition, at trial.[3] The District Court denied plaintiff's motion in part and dismissed it in part without prejudice to later raise certain objections at trial. At trial, plaintiff renewed her objections to Devanney's testimony. The Court overruled plaintiff's objections and permitted Devanney to testify to all of the above-cited facts. This Court applies a mixed standard to its review of the District Court's evidentiary rulings: this Court generally reviews evidentiary decisions of the District Court for abuse of discretion. *Inter Med. Supplies, Ltd. v. EBI Med. Sys.,* 181 F.3d 446, 464 (3d Cir.1999); *United States v. Daraio,* 445 F.3d 253, 259 (3d Cir.2006). However, to the extent that plaintiff's challenge involves a legal inquiry such as the interpretation of an evidentiary rule, this Court's review is plenary. *Id.; Barker v. Deere & Co.,* 60 F.3d 158, 161 (3d Cir.1995).

The District Court ruled that Devanney's testimony that, after the incident, plaintiff told him that she had consented to the strip search qualified as an admission of a party-opponent under Fed.R.Evid. 801(d)(2) ("Rule 801(d)(2)") and concluded that Fed.R.Evid. 403 ("Rule 403")[4] balancing supported admission. That ruling was not an abuse of the Court's discretion.[5]

■ The District Court's rulings regarding the remainder of Devanney's testimony—his testimony regarding plaintiff's history of drug use and regarding her

---

**3.** The motion argued that Devanney's testimony was not relevant, that if it was relevant its relevance was outweighed by its prejudicial effects under Fed.R.Evid. 403 and that it was not admissible as character evidence under Fed.R.Evid. 404(b).

**4.** Rule 403 states that "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R.Evid. 403.

**5.** Rule 801(d)(2) states, in relevant part, that
(d) A statement is not hearsay if—
. . . .

(2) the statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity.
Devanney's testimony certainly purports to convey plaintiff's own statement, and it is probative to a central issue in the case: whether or not plaintiff consented to the searches. This portion of Devanney's testimony therefore qualifies as an admission of a party-opponent. Plaintiff's arguments appear to raise substantial questions about the credibility of this testimony, but the District Court did not abuse its discretion when it ruled that this testimony was admissible and that those arguments could be weighed by the jury.

purpose for visiting Nieves on the night in question—were more problematic. The District Court ruled that this testimony was admissible as impeachment evidence under Fed.R.Evid. 607, and in the alternative, this testimony was admissible under the exceptions to Fed.R.Evid. 404(b) ("Rule 404(b)") such as motive, opportunity, and absence of mistake.

The District Court first concluded that plaintiff had injected details of her history of drug use into the record, and therefore that defendants were entitled to present Devanney's testimony to impeach her on that subject. The District Court's analysis failed to distinguish, however, between plaintiff's testimony in response to her counsel's proper questions about what she told the police on the night her vehicle was stopped and her testimony in response to opposing counsel's questions regarding her activities prior to that evening—testimony given only after objections to opposing counsel's questions were improperly overruled.

· On direct examination, plaintiff had testified as follows:

> Plaintiff's counsel: There's some suggestion that you told the officers you, in fact, recently used cocaine. Did that, in fact, happen?
>
> Plaintiff: No, I—actually, I told them that I did not use cocaine or—excuse me—not even cocaine, just drugs, because I was sick—that I was ill, that I was missing—I told them the whole story of how I was missing three and a half organs, severe diabetes. I told them everything.

App. at 368a. On cross-examination, defense counsel asked plaintiff the following:

> Defense counsel: And, you're saying you've never done drugs before?
>
> Plaintiff: No ... I'm saying I—
>
> Plaintiff's counsel: [Objection]
>
> Defense counsel: [Withdrawn]
>
> &#42; &#42; &#42; &#42;

> Defense counsel: Now, you said at one point you told the officers that you don't use drugs?
>
> Plaintiff: Because of my illness and also because of a couple other reasons.
>
> &#42; &#42; &#42; &#42;
>
> Defense counsel: And, are you saying that was true at the time or that's always true, you've never used drugs?
>
> Plaintiff: That was true at the time.
>
> Plaintiff's counsel: [Objection; motion to strike the previous question.]

App. at 409a–412a.

The District Court considered plaintiff's objection to this line of questioning and motion to strike, and ruled that plaintiff's above-quoted testimony on direct examination

> "opens the door enough for [defense counsel] to clarify through the witness two things; exactly what it was [plaintiff] told the officers and whether or not what she told the officers is true. The former has relevance for the officers' probable cause and reasonable suspicion, and the latter does as well in the sense that, if she was, in fact, a recent drug user, the jury could draw an inference that she was, in fact, there on a drug transaction ... because, in deciding whether the officers had reasonable suspicion, the issue is not whether she was, in fact, doing what they suspected that she was doing but whether their suspicion was reasonable. And, if, in fact, she was a person who was using drugs, that might be circumstantially relevant to the jury's ascertainment of the reasonableness of the suspicion."

App. at 423a–424a.

Thereafter plaintiff, in response to further questions regarding her drug use, proceeded to testify that she had not used drugs for five years because of her own medical problems and the death of her

mother. *Id.* The District Court later admitted the testimony of Devanney in large part to impeach this testimony of plaintiff's regarding her prior drug use.

■ The District Court exceeded its discretion when it permitted cross-examination regarding plaintiff's prior drug use. On direct examination, plaintiff had testified only regarding what she told officers on the night of the incident: she had told the officers that she did not have drugs and had not used drugs. She did not testify on direct examination regarding her actual prior history of drug use; that subject was introduced for the first time on cross-examination, over plaintiff's objections. Plaintiff had not injected the subject into the record, and therefore cross-examination on that subject was not permissible for impeachment purposes.[6] Furthermore, that testimony had no relevance to defendants' substantive case. The issues before the jury were whether the police had reasonable suspicion for their initial stop of plaintiff, whether they had probable cause for the ensuing searches, and whether plaintiff consented to those searches. Allegations of a third party regarding plaintiff's history of drug use, presented to police for the first time months after the incident, were not relevant to any of those issues. Contrary to the District Court's ruling, plaintiff's past drug use, if any there had been, could not properly be used by the jury in its "ascertainment of the reasonableness of the [defendant's] suspicion." App. at 425a.

Because plaintiff had not injected the topic into the record, and because the testimony had no relevance to the substantive issues in this case, the District Court should not have permitted defendants to pursue this line of questioning over plaintiff's objections.

When defendants later sought to put Devanney on the stand, the District Court allowed him to testify, over plaintiff's objections, without significant limitation. The Court cited several theories of relevance: (1) the Court emphasized first and foremost that Devanney's testimony was permissible to impeach plaintiff's testimony regarding her prior drug use, as discussed above; the Court also allowed the testimony (2) to impeach plaintiff's testimony that she and Nieves were social friends; (3) to "corroborate the absence of cash" found on plaintiff; and (4) because Devanney's testimony

> "puts the whole thing in context . . . the context of the . . . alleged prior relationships between the plaintiff and Ms. Nieves as her alleged drug supplier. If the jury were to be deprived of that information . . . the defendants could be prejudiced by not being able to tell the part of the story that makes [defendants' theory] feasible."

App. at 741 a. The District Court concluded that, under Rule 403, the probative value of Devanney's testimony for these purposes outweighed any unfair prejudice arising from the testimony.

The District Court enjoys considerable discretion when ruling on the relevance and admissibility of evidence under Fed. R.Evid. 401–403, but that discretion is not unlimited.[7] Because the District Court did

---

**6.** Cross-examination is generally limited to the subject matter of the direct examination and matters affecting the credibility of the witness. Fed.R.Evid. 611(b). The District Court has discretion to permit cross-examination into additional matters as if on direct examination, *id.,* but only if those additional matters are relevant. Fed.R.Evid. 402. Furthermore, as described below, this is precisely

the type of character evidence prohibited by Rule 404(b).

**7.** *Glass v. Philadelphia Electric Company,* 34 F.3d 188, 191 (3d Cir.1994); *Pfeiffer by Pfeiffer v. Marion Center Area School District,* 917 F.2d 779, 781 (3d Cir.1990); *U.S. v. Herman,* 589 F.2d 1191, 1197–98 (3d Cir.1978).

not have discretion to permit defendants to question plaintiff regarding her (irrelevant) history of drug use, as discussed above, it also lacked discretion to admit Devanney's testimony to impeach plaintiff on that subject. The Court's third and fourth theories of relevance were also improper. Devanney's allegations regarding plaintiff's relationships and prior actions, discovered by defendants months after the incident in question, could in no way "corroborate" why the officers pressed on with increasingly invasive searches despite finding no cash or drugs on either suspect. Similarly, we fail to understand how Devanney's after-the-fact allegations regarding plaintiff's relationships appropriately "put[ ] ... in context" for the jury the reasonableness of the officers' suspicion on the night in question.

Even assuming that Devanney's testimony had probative value to impeach plaintiff's testimony that she and Nieves were social friends, we find that this limited probative value was substantially outweighed by unfair prejudice to plaintiff. Devanney's testimony regarding plaintiff's history of drug use constituted a broad character attack on plaintiff based on detailed accounts of prior instances of wrongdoing that were irrelevant to defendants' substantive case. The testimony had a substantial tendency to confuse the issues, and to inflame passions of the jury by unfairly tilting the balance of sympathies in favor of defendants. *See Carter v. Hewitt*, 617 F.2d 961, 972 (3d Cir.1980) (defining "unfair prejudice"). Plaintiff had the burden of convincing the jury that the information available to the defendants on the night in question did not provide a reasonable suspicion of unlawful drug dealing. Her case for that proposition was a

strong one. Devanney's testimony, however, provided the jury with the capacity to judge whether defendants' suspicions were reasonable with the benefit of hindsight. That testimony, if believed, made it extraordinarily more difficult for the jury to say that the defendants' assumptions were unfounded. Most important, the Devanney testimony turned the focus of the trial from the issue of what the defendants knew on the night in question to the issue of what was in fact happening on that night. Therefore, the unfair prejudice arising from that testimony substantially outweighed any limited probative value that it offered.

The District Court found that if Devanney's testimony was not permissible as impeachment evidence and for the other theories of relevance described above, then in the alternative it was admissible under the exceptions enumerated in Rule 404(b)[8] such as motive, opportunity or absence of mistake:

> "plaintiff's motive was to obtain drugs from [Nieves].... Opportunity, she had the opportunity to obtain the drugs.... Absence of mistake or accident, I didn't know [Nieves] was a drug dealer, she was just my friend."

App. at 739a. The Court proceeded to weigh the evidence under Rule 403 based on those purposes and found it admissible. *Id.*

Evidence is admissible under Rule 404(b) only if it has a tendency to prove one of the enumerated "purposes" in that rule *and* if that purpose is itself relevant to the case and is not substantially outweighed by unfair prejudice. *U.S. v. Herman*, 589 F.2d 1191, 1197–98 (3d Cir.1978).

---

8. Rule 404(b) directs that
   "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent ... or absence of mistake or accident."
   Fed.R.Evid. 404(b) ("Rule 404(b)").

None of the purposes cited by the District Court have any relevance whatsoever to the contested issues in this case. Plaintiff's motive for meeting Nieves on the night in question, or her opportunity to buy drugs from Nieves, as alleged by defendants after-the-fact, simply are not relevant to the reasonableness of defendants' suspicion at the time, or to their probable cause for searching her that night. They certainly are not relevant to whether or not she consented to a strip search.

Defendants argue that the District Court mitigated or cured any prejudice arising from Devanney's testimony by giving the jury a limiting instruction. The District Court did instruct the jury at one point that it could only consider Devanney's testimony for the limited purpose of impeaching the credibility of plaintiff's testimony, but not for the issues of reasonable suspicion and probable cause. This limiting instruction did not cure the problem, however. The Court specifically instructed the jury that it should consider Devanney's testimony to assess the veracity of plaintiff's testimony regarding her history of drug use which, as described above, defense counsel should not have been permitted to elicit in the first place, and that the jury should weigh plaintiff's testimony against contrary (highly prejudicial) testimony improperly admitted to contradict it. Therefore, the limiting instruction did not cure the prejudice to plaintiff.

Finally, we must address Devanney's testimony that, when he spoke with plaintiff soon after plaintiff's encounter with defendants, plaintiff told him that the unidentified male in her car had warned her to be careful because "the place was hot," App. at 755a, by which he meant that "police were watching the area." *Id.*

The District Court ruled that this double-hearsay statement was admissible because, under Fed.R.Evid. 805, exceptions to, or exemptions from, the hearsay rule apply to each of the hearsay statements. The Court concluded that plaintiff's statement to Devanney is admissible as the admission of a party-opponent under Rule 801(d)(2) and that the unidentified male's statement to plaintiff is admissible under Rule 803(3), which excludes from the hearsay rule statements regarding the declarant's then-existing mental, emotional or physical condition. Fed.R.Evid. 803(3) ("Rule 803(3)"). The statement of the unidentified male, the Court reasoned, described a then-existing mental state of the male passenger: that he was nervous. The Court instructed the jury that it could consider this statement only for the purpose of corroborating officer Faulkner's testimony that when the unidentified male exited plaintiff's car, the police saw him look around nervously and suspiciously. Defendants submit officer Faulkner's testimony regarding the unidentified male's behavior, in turn, to support their reasonable suspicion determination.

Plaintiff's statement to Devanney qualifies as an admission of a party-opponent under Rule 801(d)(2). However, the unidentified male's statement to plaintiff is not admissible under the "state of mind" exception of Rule 803(3). To be admissible under that exception, the declaration must, among other requirements, contemporaneously evince the declarant's mental state, and declarant's state of mind must be relevant to the case. *U.S. v. Hernandez,* 176 F.3d 719 (3d Cir.1999); *Prather v. Prather,* 650 F.2d 88 (5 Cir.1981). The passenger's mental state is not itself relevant in this case; instead, defendants offer evidence of his mental state to corroborate their claim that they saw him look around nervously. In certain circumstances, evidence of a declarant's mental state in the form of intent or plan can be admitted as probative of a subsequent act pursuant thereto. *Baughman v. Cooper–Jarrett,*

*Inc.,* 530 F.2d 529, 532 (3d Cir.1976). However, even if the statement "it's hot around here" could be deemed probative of an intent or plan to look around nervously and suspiciously upon exiting plaintiff's car, the probative value of the testimony must be weighed against the risk of unfair prejudice. *Id.* In this instance, the risk of confusion of the issues from this testimony—improperly justifying the officers' actions after-the-fact via an "implied assertion," *see Hernandez,* 176 F.3d at 726–27, that plaintiff and the passenger were involved in unlawful conduct—substantially outweighs any tenuous probative value.

For these reasons, we find that the District Court lacked discretion to allow Devanney to testify regarding plaintiff's history of drug use and regarding her purpose for visiting Nieves on the night in question to the extent such testimony was not strictly limited to impeaching subjects plaintiff actually injected into the record.

### D

■ Plaintiff's final challenge is to the legality of the strip search. Plaintiff raises a range of factual assertions attacking the legality of the strip search: that defendants lacked particularized probable cause to conduct the strip search; that plaintiff did not explicitly consent to it; and that plaintiff did not voluntarily consent to it. Plaintiff raised no challenge in the court below to the sufficiency of the evidence supporting the jury's verdict that the strip search was legal. Therefore, this Court will not revisit the sufficiency of the evidence for the first time in this appeal.[9]

Plaintiff also argues that the District Court's jury instructions regarding the issue of her consent to the strip search were improper as a matter of law because the

jury should have been instructed that a suspect's consent to a strip search must be "explicit" rather than inferred from conduct. The District Court instructed the jury as follows:

"Strip searches are also governed by the Fourth Amendment's prohibition on unreasonable searches and seizures. Ordinarily, a strip search is unlawful absent a search warrant. However, as with the other types of searches, one of the exceptions to the need for a search warrant is where the suspect voluntarily consents to a strip search of her person. In determining the validity of plaintiff's consent, the same rules apply which I have discussed previously. The consent to search must be freely given; however, it is not necessary that the officer inform the plaintiff that she has the right to refuse, nor is it essential that she understands that she has the right to refuse. Indeed, the plaintiff's verbal consent need not be explicit in order to be valid. A person's consent may be inferred from the person's words, gestures and conduct.... Even if you conclude that the plaintiff did not freely consent ... the strip search of plaintiff's person was permissible if the officers had particularized probable cause."

App. at 894a–895a. The Court later supplemented its instruction:

"I want to clarify that that principle applies to all three categories of searches. It is a general statement applicable to all searches. Under the law, acquiescence to a search does not constitute consent to a search. The—and to the extent that it might have appeared that that only applied to the vehicle search because that's where I read it, I want to clear up that."

---

9. *See* Third Circuit Local Appellate Rule 28.1; *La Amiga del Pueblo, Inc. v. Robles,* 937 F.2d 689, 690–91 (1st Cir.1991).

App. at 943a. Plaintiff raised timely objections to these jury instructions pursuant to Fed.R.Civ.P. 50(c). This Court's review of the District Court's jury instructions is plenary, to determine if the jury instructions misstated the applicable law. *Walden v. Georgia–Pacific Corp.,* 126 F.3d 506, 513 (3d Cir.1997). If the instructions did not misstate the law, this Court's review is for abuse of discretion. *Id.*

Police need not have probable cause or a warrant to conduct a search if the suspect consents to the search. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The state must demonstrate that consent was in fact voluntarily given and was not the product of coercion or duress, either express or implied. *Id.* at 226, 248–49, 93 S.Ct. 2041. Whether or not the suspect's consent was truly voluntary is a factual inquiry which courts examine under the totality of the circumstances, "both the characteristics of the accused and the details of the interrogation." *Id.* at 226, 93 S.Ct. 2041.

This Court holds that a factfinder can consider both the verbal and non-verbal conduct of the suspect when assessing the voluntariness of her consent. *U.S. v. Wilson,* 413 F.3d 382, 388 (3d Cir.2005).[10] Furthermore, "even an intrusion of the magnitude involved in a search of one's home and a strip search of one's body is constitutional if the state secures consent," so long as the consent is freely given. *Good v. Dauphin County Social Services for Children and Youth,* 891 F.2d 1087, 1093 (3d Cir.1989). However, "the highly intrusive nature of strip searches and body cavity searches is widely recognized, fraught as they are with the inherent potential to degrade, demean, dehumanize, and humiliate." *Evans v. City of Zebulon,* 351 F.3d 485, 492 (11th Cir.2003), *vacated on other grounds,* 364 F.3d 1298 (11th Cir.2004) (en banc).

A search conducted pursuant to consent of the suspect is limited to the scope of the consent, and the standard for measuring the scope of consent is objective reasonableness: what a reasonable person would have understood from the exchange between the officer and the suspect. *Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). The scope of the search is generally defined by its expressed object. *Id.*

The District Court's jury instructions were entirely consistent with these legal principles. In support of her proposition that consent to a strip search must be "explicit," plaintiff points only to dicta by (now) Justice Thomas in a D.C. Circuit opinion, *U.S. v. Rodney,* 956 F.2d 295 (D.C.Cir.1992). In *Rodney,* the Court considered whether police officers exceeded the scope of a suspect's consent when, after receiving consent to search the suspect for drugs, they searched the suspects outer garments, including the crotch area, in continuous sweeping motions. Justice Thomas held that, because the evidence in that case established that drugs are frequently hidden in the crotch area, "a request to conduct a body search for drugs reasonably includes a request to conduct some search of that area." *Id.* at 298. He stated, however, that

> "although *Jimeno* states the test 'generally' used to determine the scope of a consent to search, we doubt that the Supreme Court would have us apply that test unflinchingly in the context of body searches. At some point, we suspect, a body search would become so intrusive that we would not infer consent

---

**10.** Similarly, other courts hold that consent can be inferred "from an individual's words, gestures or conduct." *U.S. v. Hylton,* 349 F.3d 781, 786 (4th Cir.2003) (adopting the phrasing utilized by the District Court in this case).

to it from a generalized consent, regardless of the stated object of the search."

*Id.*

We read Justice Thomas's opinion not as opining that a different legal standard might apply to strip searches but rather as suggesting that, if the "expressed object" of a search is a search of a suspect for drugs on the roadside, a reasonable person would not interpret a "generalized consent" thereto to include everything up to and including a strip or body cavity search. This principle is inapposite to the present case. Defendants testified that plaintiff specifically consented to a strip search. The District Court provided instructions to the jury specifically regarding the issue of plaintiff's consent to the strip search. Plaintiff points to no authority establishing that the Court was required to instruct the jury that consent to a strip search must be "explicit." Therefore, the District Court's jury instructions did not misstate the law.[11]

### V

We will affirm the judgment of the District Court on count seven. We will reverse the judgment of the District Court on counts one, two, three and four and remand for a new trial on those counts.[12]

11. Judge Fisher believes that the analysis in section IV–D is flawed because there was no evidence or testimony at trial indicating that Reppert specifically consented to a body cavity search, and he would hold that the jury instructions did misstate the law by not requiring explicit consent precedent to a body cavity search, as distinguished from a strip search that does not involve any inspection—visual or otherwise—of a body cavity. *See* 79 C.J.S. *Searches* § 146 (2007). Two cases the

majority cites containing language about the high degree of intrusiveness of body cavity searches, *Rodney* and *Evans,* support such a holding.

12. No appeal was taken from the District Court's judgment on counts five and six, and no appeal was taken from the District Court's judgment regarding officer Lake on count one.